1  LAEL D. ANDARA (SBN 215416)
   MICHAEL D. KANACH (SBN 271215)
2  ROPERS, MAJESKI, KOHN & BENTLEY
   1001 Marshall Street, Suite 500
3  Redwood City, CA  94063-2052
   Telephone:    (650) 364-8200
4  Facsimile:    (650) 780-1701
   Email:        landara@rmkb.com
5                mkanach@rmkb.com

6  COURTLAND C. MERRILL (pro hac vice forthcoming)
   DAN HALL (pro hac vice forthcoming)
7  ANTHONY OSTLUND
   BAER & LOUWAGIE P.A.
8  90 South Seventh Street, Suite 3600
   Minneapolis, MN  55402
9  Telephone: (612) 349-6969
   Facsimile: (612) 349-6996
10 Email: cmerrill@aoblaw.com
          dhall@aoblaw.com
11
   Attorneys for Plaintiff
12 JOHNSTECH INTERNATIONAL CORP.

13                     UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15

16  JOHNSTECH INTERNATIONAL CORP.,       CASE NO.

17                  Plaintiff,            **COMPLAINT FOR PATENT
                                          INFRINGEMENT; JURY TRIAL
18  v.                                    DEMANDED**

19  JF TECHNOLOGY BERHAD, JF
    MICROTECHNOLOGY SDN BHD,
20  JFOONG TECHNOLOGIES SDN BHD,

21                  Defendants.

22

23

24         Plaintiff Johnstech International Corp. ("Johnstech"), for its Complaint against Defendants

25  JF Technology Berhad, JF Microtechnology SDN BHD, and J Foong Technologies SDN BHD,

26  alleges as follows:

27  / / /

28  / / /

RC1/7509076.1/RS                    - 1 -              COMPLAINT FOR PATENT INFRINGEMENT;
                                                              JURY TRIAL DEMANDED

## JURISDICTION, VENUE AND JOINDER

1. This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. § 1 et seq., and more particularly, 35 U.S.C. §§ 271 and 281.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

4. Joinder is proper under 35 U.S.C. § 299. Defendants are related business entities and/or affiliates who have acted in concert with one another. The allegations of infringement contained herein arise out of the same series of occurrences relating to the manufacture, use, import, sale and/or offering for sale of the same products manufactured and imported into the United States by Defendants.

## THE PARTIES

5. Johnstech is a Minnesota corporation with a principal place of business at 1210 New Brighton Boulevard, Minneapolis, Minnesota 55413. Johnstech manufactures, develops and offers for sale test contacts used to test integrated circuits. Johnstech does business in the State of California and in this District.

6. Upon information and belief, Defendant JF Technology Berhad, is a company formed under the laws of Malaysia, with a place of business in Malaysia. Upon information and belief, Defendant JF Microtechnology SDN BHD, is a company formed under the laws of Malaysia, with a place of business in Malaysia. Defendant J Foong Technologies SDN BHD, upon information and belief, is a Malaysian company with a place of business in Malaysia. Defendants JF Technology Berhad, JF Microtechnology SDN BHD, J Foong Technologies SDN BHD, are upon information and belief, affiliated companies operating in concert with one another, and are hereafter referred to collectively as "JF Technology."

7. Upon information and belief, JF Technology, either alone or in concert with affiliated companies, manufactures the infringing test contact products at issue herein for sale throughout the United States, including in this District, including the products sold under the name "Zigma." Upon information and belief, JF Technology places infringing test contact

products into the stream of commerce with the reasonable expectation and/or knowledge that the actual and potential ultimate purchasers and users of the products are located in this District, as well as elsewhere in the United States. Upon information and belief, JF Technology has had continuous and systematic contacts with this District through its efforts to solicit, market and/or sell test contact products throughout the United States.

## THE PATENT-IN-SUIT

8. Johnstech is the assignee possessing all substantial right, title and interest in United States Patent No. 7,059,866 ("the '866 Patent"), entitled "Integrated Circuit Test Contact to Test Apparatus," which issued on June 13, 2006. Accordingly, Johnstech has standing to sue for infringement of the '866 Patent. A true and correct copy of the '866 Patent is attached hereto as Exhibit A.

## COUNT I

## PATENT INFRINGEMENT

9. Johnstech realleges the allegations in the preceding paragraphs as if fully restated in Count I of this Counterclaim.

10. Upon information and belief, JF Technology has been and still is, directly infringing, either literally or under the doctrine of equivalence, one or more claims of the '866 Patent by importing, making, using, selling and/or offering to sell in the United States, test contact products, including the product offered for sale under the name "Zigma."

11. Upon information and belief, JF Technology has been and still is, indirectly infringing, either literally or under the doctrine of equivalence, one or more claims of the '866 Patent by importing, making, using, selling and/or offering to sell test connects that directly infringe the '866 Patent, including the product offered for sale under the name "Zigma."

12. Upon information and belief, JF Technology's infringement of the '866 Patent has been willful and deliberate, rendering this case "exceptional" within the meaning of 35 U.S.C. § 285.

13. Johnstech has been damaged by JF Technology's infringement of the '866 Patent. Unless restrained and enjoined by this Court, JF Technology will continue to infringe the '866

1  Patent resulting in substantial, continuing, and irreparable damage to Johnstech.

2  14.  Johnstech has complied with the notice requirements of 35 U.S.C. § 287(a) with
3  respect to the '866 Patent.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Johnstech demands judgment as follows:

    A.    That JF Technology be adjudged to have infringed the '866 Patent;

    B.    That the '866 Patent be adjudged valid and enforceable;

    C.    That JF Technology be adjudged to have willfully and deliberately infringed the '866 Patent;

    D.    That JF Technology, its officers, and agents, servants, employees, and attorneys, and those persons in active concert or participation with them who received actual notice of the order by personal service or otherwise, be preliminarily and permanently restrained from enjoining from further infringement of the '866 Patent;

    E.    An accounting and award of damages by virtue of JF Technology's infringement of the '866 Patent;

    F.    An award of triple damages because of JF Technology's willful infringement of the '866 Patent, in accordance with 35 U.S.C. § 284;

    G.    An assessment of pre-judgment and post-judgment interest and costs against JF Technology, together with an award of such interest and costs, all in accordance with 35 U.S.C. § 284;

    H.    That the present case be adjudged an "exceptional case" within the meaning of 35 U.S.C. § 285 and reasonable attorneys' fees be awarded pursuant thereto; and

    I.    An award of such other further relief as this Court may deem just and proper.

///
///
///
///

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States, Johnstech hereby demands a trial by jury of all issues triable in the above action.

Dated: June 20, 2014                    ROPERS, MAJESKI, KOHN & BENTLEY


By: */s/ Michael D. Kanach*
    LAEL D. ANDARA
    MICHAEL D. KANACH
    Attorneys for Plaintiff
    JOHNSTECH INTERNATIONAL CORP.

# EXHIBIT A

US007059866B2

## (12) United States Patent
### Gilk

(10) Patent No.: **US 7,059,866 B2**
(45) Date of Patent: **Jun. 13, 2006**

(54) **INTEGRATED CIRCUIT CONTACT TO TEST APPARATUS**

(75) Inventor: **Mathew L. Gilk**, Lakeville, MN (US)

(73) Assignee: **JohnsTech International Corporation**, Minneapolis, MN (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/829,577**

(22) Filed: **Apr. 22, 2004**

(65) **Prior Publication Data**

US 2004/0248448 A1    Dec. 9, 2004

**Related U.S. Application Data**

(60) Provisional application No. 60/465,022, filed on Apr. 23, 2003.

(51) **Int. Cl.**
  *H01R 12/00* (2006.01)
  *H05K 1/00* (2006.01)
(52) **U.S. Cl.** ...................................................... **439/66**
(58) **Field of Classification Search** ................ 439/65, 439/66, 68, 69, 70, 71, 72, 73, 591
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 5,069,629 | A | | 12/1991 | Johnson | 439/71 |
| 5,207,584 | A | * | 5/1993 | Johnson | 439/66 |
| 5,388,996 | A | * | 2/1995 | Johnson | 439/65 |
| 5,437,556 | A | | 8/1995 | Bargain et al. | 439/66 |
| 5,594,355 | A | | 1/1997 | Ludwig | 324/755 |
| 5,634,801 | A | * | 6/1997 | Johnson | 439/71 |
| 5,749,738 | A | | 5/1998 | Johnson et al. | 439/66 |
| 6,019,612 | A | | 2/2000 | Hasegawa et al. | 439/73 |
| 6,231,353 | B1 | | 5/2001 | Rathburn | 439/66 |
| 6,244,874 | B1 | | 6/2001 | Tan | 439/66 |
| 6,572,388 | B1 | | 6/2003 | Lee | 439/71 |

FOREIGN PATENT DOCUMENTS

JP    2002-043004 A    2/2002

OTHER PUBLICATIONS

Brochure entitled *SMT type Low-inductance Socket, IC299 Series* published by Yamaichi Electronics Co. Ltd.

* cited by examiner

*Primary Examiner*—Chandrika Prasad
(74) *Attorney, Agent, or Firm*—Nawrocki, Rooney & Sivertson, P.A.

(57) **ABSTRACT**

A contact test set for use in testing integrated circuits. The set includes a housing having oppositely-facing surfaces and one or more slots extending through the housing between the surfaces. A first surface, during use of the test set, is approached by an integrated circuit to be tested, and a second surface is proximate the load board at a test site. A contact is received in a slot, each contact having a first end engagable by a lead of the integrated circuit device. A second end of each contact is in engagement with a corresponding terminal. Each contact is movable between a first orientation, unengaged by a corresponding lead of an IC and a second orientation in which the IC is engaged by the corresponding lead of an IC and urged into its slot. An elastomer biases the contact to its first orientation. The contact, when moved between its first and second orientations, does not slide across a terminal of the load board.

**4 Claims, 1 Drawing Sheet**





# INTEGRATED CIRCUIT CONTACT TO TEST APPARATUS

This is a regular application filed under 35 U.S.C. § 111(a) claiming priority, under 35 U.S.C. § 119(e)(1), of provisional application Ser. No. 60/465,022, previously filed Apr. 23, 2003 under 35 U.S.C. § 111(b).

## BACKGROUND OF THE INVENTION

### 1. Technical Field

The present invention relates to a connector apparatus which accomplishes interfacing of an integrated circuit with an IC test apparatus. More particularly, the present invention provides an electrical connection system which facilitates a positive connection between an IC device under test (DUT) and a load board of the test apparatus, and positive restraint of very small connectors utilized in current test apparatus.

### 2. Description of the Related Art

Many different test site configurations have been devised for quickly and temporarily connecting integrated circuit leads of a device to be tested to a load board of a tester. Automated test apparatus in particular use a number of such configurations. One arrangement uses force brought to bear upon a contact positioned between a lead of the IC and the load board to deform a probe tip of the contact and engage a pad on the load board. Another arrangement is to use engagement force applied by the IC to rotate a contact mounted within a slot to overcome positional bias imposed by an elastomeric element to the contact. An end of the contact opposite an end engaged by the IC contacts a pad of the load board when the IC and test site are brought together.

Such configurations provide for positive connection between leads of a DUT and corresponding leads of a test apparatus and rely upon the initial engagement between the DUT and test site to ensure a positive connection.

It would be desirable to provide a system affording additional predetermined force, in addition to that provided by initial engagement of the DUT and the test apparatus, to better ensure a positive electrical connection. Further, it would be desirable that excessive force not be required between the DUT and test site.

It is to these dictates of the prior art that the current invention is directed. The present invention is an apparatus which accommodates these dictates.

## SUMMARY OF THE INVENTION

The present invention is a small pin contactor arrangement, positioned within a housing, for facilitating connecting the leads of an integrated circuit to corresponding terminals of a load board. The housing typically has a plurality of generally parallel slots for receiving a corresponding plurality of contacts, one in each slot. Each contact has a nose end that extends from its slot on one side of the housing, and a tail end that extends from its slot on an opposing side of the housing. The contacts are generally "S" shaped. A front elastomer extends through the housing along an axis generally perpendicular to the slots such that the nose of a contact curves over the front elastomer. A rear elastomer also extends along an axis generally perpendicular to the slots such that the tail of the contact curves around the rear elastomer.

The nose of the contact has a curved surface to be engaged by a lead of an integrated circuit. The tail of the contact has a flat portion for engaging a terminal pad of the load board.

In use, a lead of an integrated circuit will be made to engage the nose of a contact at the curved surface. Such action will effect compression of the front elastomer. The contact will rotate about a curved surface defined by an axis through the tail. A linear contact surface of the tail, adjacent the curved surface, is parallel to and in engagement with the terminal pad of the load board. This contact configuration tends to substantially eliminate sliding motion of the contact against the terminal pad of the load board. The engagement portion of the contact with the terminal pad moves forward as a result of the rolling of the contact, simultaneously preventing sliding between the tail and terminal pad.

The terminus of the contact tail also has a surface that engages a wall of the housing. This surface serves to positively prevent the contact from sliding along the terminal of the load board by maintaining the position of the contact relative to the housing. The front elastomer also plays a role in achieving this by urging the tail of the contact toward the housing wall and maintaining the contact seated against that wall.

The present invention is thus a contact set assembly which solves many of the problems of the prior art. It enables positive contact to be established along electrical paths, yet it minimizes erosion of a lead of a load board 12.

## BRIEF DESCRIPTION OF THE DRAWING

The objects and features of the present invention will become more apparent to those skilled in the art upon reference to the following description, taken in conjunction with the accompanying drawing wherein like reference numerals refer to the same part or feature, and wherein:

The FIGURE is a cross-section view of the present invention.

## DETAILED DESCRIPTION OF THE INVENTION

A contactor assembly 5, as shown in the FIGURE, is mounted in a housing 10. Housing 10 has generally planar, parallel opposed sides 22 essentially at right angles to pairs of opposed edges. Housing 10 is configured to effect electrical connection of an integrated circuit device (DUT) 14 to a load board 12. Device 14 has leads 17 and load board 12 has terminals or pads 16 which are electrically connected by contacts 18 mounted within housing 10.

Parallel sides of housing 10 bound generally equally spaced parallel slots 20, each for receiving a corresponding contact 18 therein.

Each slot 20, it is intended, contains a contact 18. Contacts 18 are thin with generally planar surfaces. Each has a nose end 26 and a tail end 28 which together define an essentially "S" shaped structure. Nose end 26 is, as illustrated, larger than tail end 28 to provide a greater outward extension to protrude from housing 10 beyond one side to contact leads 17 of device 14. Tail end 28 has a linear portion 29 to provide a positive electrical connection to terminals 16 of lead board 12.

Generally tubular shaped channels 31 and 33 extend through housing 10 along axes generally perpendicular to planes defined by slots 20 with front channel 31 being larger than rear channel 33 to better conform to the corresponding concave portion of edges of engaged nose ends 26 and tail ends 28. A cylindrical shaped front elastomer 30 is received within front channel 31, and a cylindrical shaped rear elastomer 32 is received within rear channel 33.

Nose end **26** has a concave inner edge **25** which engages and bears against front elastomer **30**. Similarly, tail end **28** has a concave inner edge **42** which engages and bears against rear elastomer **32**. Front channel **31** and rear channel **33** have corresponding communicating apertures **33**, **35** extending through to load board **12**. Proximate sides of channels **33**, **35** are spaced closer than distances the same as the diameters of their respective channels **31**, **33**. This permits inserting elastomers **30** and **32** into channels **31**, **33** by urging them through their respective apertures **33**, **35**. Elastomers **30**, **32** are thereby retained in place.

An alignor **36** extends across an outer portion of housing **10** proximate the nose end **26** of the contact **18**. The portion of the alignor **26** opposite contacts **18** defines a stop **38**. The alignor **36** locates an edge of DUT **14** such that its leads **17** are opposite the outward extensions of corresponding nose ends **26** of contacts **18**, and also orients the leads **17** parallel to the contacts **18**. Stop **38** also limits the outward extension of contacts **18**.

DUT **14** is positioned proximate housing **10** in the position and orientation shown in the FIGURE. Apparatus, not shown, determines the precise location of device **14** relative to surface **19** of housing **10** such that each lead **17** is directly opposite a contact **18**. DUT **14** is then moved closer to housing **10** as shown in the FIGURE. This effects engagement of the device **14** and the nose end **26** of a corresponding contact **18**. Contacts **18** are thus rotated, their nose ends **26** engaged by opposing leads **17** and their tail ends **28** engaging terminals **16**. This rotation of contacts **18** will also result in flat portion **29** of each rising up slightly at one end as its contact rolls counterclockwise, as shown by arrow **44** in the FIGURE.

Such action results in front elastomer **30** and rear elastomer **32** both being compressed. Since the diameters and characteristics of the elastomers are selectable, the amount of force required to compress the elastomers can be preselected. This force is chosen so as to be sufficient to provide a good electrical connection between the leads and terminals.

In the dual elastomer configuration as pictured in the FIGURE, the front elastomer **30** provides flexibility in controlling contact force by the device **14** in addition to aiding in keeping the contact tail **28** engaged against a wall surface **6**. In this configuration the front elastomer **30** is fully in compression. As the front elastomer **30** is compressed, the displaced material can expand into an elastomer relief area **8**. The rear elastomer **32** can be configured and used in either tension or compression.

The front elastomer **30** can play a significant role in preventing contacts **18** from being easily released from the housing **10** while the contacts **18** are not engaged by DUT **14**, as after implacement. A contact **18** is rotated clockwise, and the contact **18** is then pinched between the front elastomer **30** and alignor **36**. As a contact **18** is removed from the bottom, both the front and rear elastomers **30**, **32** need to be compressed to permit the contact **18** to pass between the two.

This contactor system has been designed to prevent contact translational relative motion (sliding) against the load board **28**. Sliding motion causes wear on the load board pads, an undesirable characteristic. The sloped terminus of contact tail **6** in engagement with housing wall **15** is instrumental in preventing the contact **18** from sliding along the load board **12**. The front elastomer **30** also plays a role in helping achieve this end by forcing the contact **18** in a direction to remain seated against wall **15** of the housing **10**.

Rather than sliding along leads **17** as contacts of previous contactors do, the contact motion in the present invention is a rolling action. As the contact **18** compresses the elastomers, the point of contact between the lead **17** and the contact tail **28** walks forward on the load board **12** (translates horizontally) and travels along the lower contact arc **13**.

The flat portion **29** of the contact tail design **28** controls location of contact nose **26** while allowing the contact nose **26** to be pre-loaded in the uncompressed state, as illustrated in the FIGURE. The flat portion **29** of the contact tail **28** constrains the contact **18** from achieving an ultimate rolling equilibrium position, and allows the partial compression of the front elastomer **30** without sliding of the tail **28** with respect to the load board **12**. This creates immediate contact force at the load board **12**, which improves the effective compliance range (operating range) of the contactor system.

In lieu of a flat portion **29** on the contact tail **28**, the alignor **38** can be used to control the contact nose **26** position and provide the necessary constraint to facilitate pre-loading the nose **26** of the contact **18**.

This design can be alternatively configured as a single elastomer system. In this configuration the rear elastomer **32** would define the applicable force necessary at both the contact nose **26** and contact tail **28**. The design of housing **10** and contact **18** would be modified from the FIGURE to facilitate this configuration option. The rear elastomer **32**, again, can be placed in either tensile extension or compression.

It will be understood that this disclosure, in many respects, is only illustrative. Changes may be made in details, particularly in matters of shape, size, material, and arrangement of parts without exceeding the scope of the invention. Accordingly, the scope of the invention is as defined in the language of the appended claims.

What is claimed is:

1. Apparatus for electrically connecting a lead of the integrated circuit to be tested to a corresponding terminal of a load board at a test site, comprising:

a housing having oppositely facing surfaces, a first approachable by an integrated circuit to be tested and a second proximate the load board, a slot extend through said housing from a first of said oppositely facing surfaces to a second of said oppositely facing surfaces;

a contact receivable in said slot having a first end engagable by the lead and a second end in engagement with the terminal, said contact being rollable across the terminal between a first orientation unengaged by the lead of the integrated circuit and a second orientation in which said first end of said contact is engaged by the lead of the integrated circuit and urged into said slot; and

means for biasing said contact to said first orientation, wherein, as said contact is rolled between said first and said second orientations thereof, sliding motion of said second end of said contact across the terminal is substantially eliminated.

2. Apparatus in accordance with claim **1** wherein said contact is generally S-shaped.

3. Apparatus in accordance with claim **2** wherein said means for biasing comprises a first elastomer interfacing with said first end of said contact and a second elastomer interfacing with said second end of said contact.

4. Apparatus in accordance with claim **3** wherein said second end of said contact includes a protrusion, and wherein said housing defines a wall engaged by said protrusion to substantially eliminate sliding motion of said second end of said contact across the terminal.

\* \* \* \* \*