UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNSTECH INTERNATIONAL CORP.,<br><br>Plaintiff,<br><br>v.<br><br>JF MICROTECHNOLOGY SDN BHD,<br><br>Defendant. | Case No. 14-cv-02864-JD<br><br>**ORDER RE SANCTIONS AND SUMMARY JUDGMENT ON COUNTERCLAIMS**<br><br>Re: Dkt. Nos. 113-12, 141 |

**BACKGROUND**

This order resolves the motion for summary judgment by plaintiff Johnstech International Corporation ("Johnstech") on counterclaims by defendant JF Microtechnology SDN BHD ("JFM") in this patent suit. Dkt. Nos. 113-12 (under seal), 128 (redacted). It also resolves a related sanctions motion brought by Johnstech. Dkt. No. 141. Summary judgment is granted on the challenged claims and an evidentiary sanction is imposed against JFM.

JFM brought five counterclaims in response to Johnstech's patent suit. Dkt. No. 70. The first counterclaim seeks declaratory judgment of invalidity and noninfringement of the patent in suit, and is not in issue here. The summary judgment motion deals only with the second through fifth counterclaims, which arise out an August 2014 letter that Johnstech sent "to multiple current and prospective customers of JFM" a few months after this litigation began. *Id*. at 7. The counterclaims challenge three statements in the letter:

[1.] [O]ur R&D efforts have been granted several hundred patents[;]

[2.] Patents . . . protect buyers from being victimized by low-quality copies or exposed to substantial legal liabilities[;]

[3.] We were further dismayed to read language in the JF Technology Terms and Conditions of Sale that the purchaser of their

> products indemnifies JF Technology against possible patent infringement litigation!

*See* Dkt. No. 70 at 7-8; *see also* Dkt. No. 70-1.

JFM contends that these statements amount to defamation, false advertising under the Lanham Act (15 U.S.C. § 1125), unfair business practices under California Bus. & Prof. Code § 17200, and intentional interference with prospective economic advantage. Johnstech moves for summary judgment on JFM's second through fifth counterclaims on merits grounds particular to each claim, on immunity under the *Noerr-Pennington* doctrine, and for lack of damages evidence. Dkt. Nos. 113-12, 128.

## DISCUSSION

## I.   SANCTIONS MOTION

JFM did not spell out the amount or basis of its purported damages for the counterclaims until it gave Johnstech a report by a retained certified public accountant, James Pampinella, after the close of fact discovery. Dkt. No. 113-12 at 14; Dkt. No. 113-17. This timing raises two serious concerns. JFM should have made, early in the case, an initial disclosure with a "computation of each category of damages" along with the "documents or other evidentiary material" on which the computations were based, and other "materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). While the courts have declined to take a rigid approach to the specificity required for initial disclosures about damages, it has been abundantly clear for some time that at least some facts and figures, however tentative, need to be provided; simply saying "you owe me" is not enough. *See, e.g., City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003). And yet, all JFM said in its initial disclosures for damages was just that. Even as late as its final supplemental disclosures, which it served just before the close of discovery, JFM's "computations" of special damages consisted of nothing more than cursory and unadorned statements like "[a]ll monies lost . . . as a result of business lost by JF Microtechnology as the result of the false letter" and "[a]ll profits earned as a result of the unlawful diversion of business" from JFM to Johnstech. Dkt. No. 142-2 at 7. The "computation" for general damages managed to be even less informative: "[m]onies to compensate" for "shame, mortification and hurt feelings resulting from the false letter." *Id.*

United States District Court
Northern District of California

Needless to say, JFM did not provide or even identify any evidence or documentation in support of these hazy generalizations.

In effect, JFM never disclosed at any time in the litigation a useful valuation of its counterclaim damages as Rule 26(a) requires. That is an unacceptable default. The federal rules treat initial disclosures as automatic and time-sensitive. This Court's Standing Order for Civil Cases, which governs this litigation, expressly incorporates these requirements. The sanction for failing to adhere to Rule 26(a) is exclusion of improperly disclosed evidence and materials. Specifically, Rule 37 provides a "self-executing, automatic sanction" of exclusion "to provide a strong inducement for disclosure of material." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (internal citation omitted). Exclusion is appropriate "unless the failure to disclose was substantially justified or harmless." *Id.* at 1179 (citation omitted). Bad faith or willfulness is not a required finding and the exclusion sanction will apply "even when a litigant's entire cause of action" will be precluded. *Id.* at 1180 (internal quotation omitted).

A fairly compelling case can be made to strike JFM's counterclaim damages on Rule 26(a) grounds alone. But JFM has dug itself an even deeper hole. When it finally specified its alleged damages, JFM relied on evidence that it had failed to provide in discovery. As Johnstech points out, all of JFM's damages demands flow exclusively from overseas sales data that JFM had withheld despite being called for in a fair reading of Johnstech's discovery requests. This problem surfaced during a hearing on another issue, and the Court was concerned enough about JFM's conduct to call for supplemental briefing on the facts and whether sanctions should be imposed. Dkt. No. 138.

In response to the Court's inquiry, JFM withdrew Pampinella's damages calculations and opinions "for all purposes in this case," and agreed that it would "not seek any special damages in the case under the counterclaims." Dkt. No. 145 at 1. In effect, JFM has voluntarily relinquished any claim for damages based on lost profits or business opportunities, Johnstech's own sales and profits, and any other type of actual harm purportedly caused by the August 2014 letter. The parties also advised the Court that they had privately resolved "reimbursement by JFM of Johnstech's expenses incurred as a result of this issue." *Id.*

3

While the parties appear to have worked out a resolution to their satisfaction, the Court is troubled by the way JFM and its attorneys have handled the damages issue. JFM and its lawyers did not make timely and appropriate initial disclosures or discovery productions for the counterclaim damages, and they have not offered an explanation that comes close to excusing these defaults. When counsel and clients disregard the rules, the fairness, integrity and efficiency of our federal judicial system suffers. JFM's effort to make amends counts for something but following the rules in the first place would have counted for much more. Consequently, to underscore the gravity of JFM's misconduct, the Court adopts JFM's relinquishment of special or actual damages claims as an evidentiary sanction that bars JFM from making a claim for or presenting evidence of any special or actual damages on the second through fifth counterclaims.

Johnstech also urges the Court to bar any claim for or evidence of general damages for purported reputational harm. The request has some appeal in light of JFM's misconduct, but since the Court dismisses all of the counterclaims on other grounds, it declines to consider the general damages sanction at this time. If for some reason this issue returns to the case, which is a highly unlikely development, the Court may take it up then. With respect to monetary sanctions, Johnstech says its expenses have been compensated and does not ask that the Court add more to that payment.

## II. SUMMARY JUDGMENT MOTION

### A. Legal Standards

The Court may grant summary judgment on a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party, and material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). On summary judgment, the "'evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). The Court "may not weigh the evidence or make credibility determinations." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009) (citing *Anderson*, 477 U.S. at 255). Under the

4

current version of Rule 56, the Court may grant summary judgment on portions of a claim or defense. *See Perez v. California Pac. Bank*, No. 13–cv–03792–JD, 2015 WL 502294452, at *2 (N.D. Cal. Aug. 25, 2015).

### B. Defamation

Summary judgment is granted on what remains of JFM's defamation claim. JFM's complaint originally alleged a broad claim for defamation based on Johnstech's communications "impugning JFM's products as 'low-quality copies' of Plaintiff's products and misrepresenting the Terms and Conditions under which JFM's products are provided." Dkt. No. 70 at 10. But that general claim for defamation is not actionable without proof of special damages. *See Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 382 (1986) (citing Cal. Civ. Code § 45a, which requires special damages when defamatory language is not "not libelous on its face"). Now that JFM is barred from seeking special damages, it wants to recast the defamation claim as one solely for libel per se, which presumes injury and does not require proof of harm. Dkt. No. 145 at 3.[1] It appears that JFM never mentioned libel per se in any prior pleadings or discovery responses, and proposed it for the first time response to the sanctions motion.

JFM's salvage operation is ill considered. As an initial matter, a good argument can be made that JFM's effort to spring a libel per se claim on Johnstech at this late date should simply be denied as untimely and unfair to Johnstech. But even more compelling is that libel per se cannot be sustained on the facts presented to the Court. Libel per se is limited to a false written statement "which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a; *see Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1010 (9th Cir. 2001). "The determination as to whether a publication is libelous on its face is one of law, and must be measured by 'the effect the publication would have on the mind of the average reader.'" *Downing*, 265 F.3d at 1010 (quoting *Newcombe v. Adolf*

---

[1] JFM also attempts to portray any "discussion" of these two statements by Johnstech's sales agent with anyone as slander per se. Dkt. No. 145 at 3. But JFM has no evidence showing this actually occurred. The discovery responses JFM relies on say nothing more than that the letter was discussed -- there is no evidence that the "low-quality copies" or terms and conditions statements were ever specifically addressed or repeated in those discussions.

5

*Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998)). A defamatory meaning may not be found by reading statements in isolation; they must be judged in the context in which they were made. *Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005) (citing *Norse v. Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993)).

The benign statements JFM challenges cannot reasonably be understood to expose it to "hatred, contempt, ridicule, or obloquy," cause it to "be shunned or avoided," or injure it in its occupation. Cal. Civ. Code § 45. Libel per se is intended to redress false statements that seriously impugn morals, character or reputation in a way that jumps off the page without the need for further explanation. The "clearest example of libel per se is an accusation of crime." *Barnes-Hind*, 181 Cal. App. 3d at 385. Section 45's mention of statements that have "a tendency to injure [a party] in his occupation" must rise to a similar level. Cal. Civ. Code § 45. It requires statements that disparage the integrity or honesty of a business, for example by alleging "fraud and deception and unfair dealing with their customers." *Barnes-Hind*, 181 Cal. App. 3d at 381, 385-86 (advertisements and written communications sent to competitor's customers, claiming without justification that target's cleaning solution caused irritation and did not work, did not reasonably call into question target's business methods and did not rise to libel per se); *see also Visant Corp. v Barrett*, No. 13cv389 WQH, 2013 WL 3450512, at *8 (S.D. Cal. Jul. 9, 2013) (false statements about company's imminent insolvency actionable as libel per se); *Alvarez v. Petersen*, Nos. E052144, E052578, 2012 WL 2116189, at *9 (Cal. Ct. App. Jun. 12, 2012) (blog accusing business entities of participating in a Ponzi scheme actionable as libel per se).[2]

Johnstech's statement about the purported scope of JFM's indemnity rights is hardly the stuff of scandal or an accusation that the average reader would reasonably interpret, without more, as showing JFM in a disreputable or contemptible light. As JFM concedes, its sales terms and conditions in fact require buyers to indemnify it against patent claims under certain conditions, *see* Dkt. No. 70 at 8, Exh. B, which in itself eliminates the possibility that the statement can be treated

---

[2] Federal courts may consider unpublished California state court decisions. *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value") (citing *Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997)).

6

1   as libelous on its face.  JFM also says the statement is libelous when compared to "commercial

2   norms" and the UCC.  Dkt. No. 145 at 4.  But again, JFM cannot rely on such exogenous sources

3   for libel per se, because that claim can only arise when the defamatory character is evident

4   "without the necessity of explanatory matter . . . innuendo or other extrinsic fact."  Cal. Civ. Code

5   § 45a; *see also Sidense Corp. v. Kilopass Tech. Inc.*, No. C 11-04112 SI, 2012 WL 3545289, at *6

6   (N.D. Cal. Aug. 16, 2012).

7         Johnstech's statement about "low-quality copies" is also not actionable as libel per se.  The

8   actual statement made in the letter is highly generalized and not a specific statement about JFM's

9   products or their alleged quality at all: "Patents . . . protect buyers from being victimized by low-

10  quality copies or exposed to substantial legal liabilities."  Dkt. No. 70-1.  In addition,

11  characterizing something as "low-quality" is too vague and unquantifiable to be proven true or

12  false, and cannot form the basis for a claim of defamation.  *See Sidense*, 2012 WL 3545289, at *5.

13      **C.  Lanham Act**

14        Summary judgment is also granted on the Lanham Act claim.  The false advertising theory

15  JFM seeks to pursue under the Lanham Act requires proof of:  (1) a false statement of fact by the

16  defendant in a commercial advertisement about its own or another's product; (2) the statement

17  actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the

18  deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

19  caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to

20  be injured as a result of the false statement, either by direct diversion of sales from itself to

21  defendant or by a lessening of the goodwill associated with its products.  *Skydive Ariz., Inc. v.

22  Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B)).

23        JFM has not proffered any evidence showing a material dispute of fact warranting a trial

24  on any of these elements.  As with libel per se, Johnstech's statement about "low-quality copies"

25  does not rise to a Lanham Act issue because it is a generalized characterization rather than a

26  "statement of fact" specifically directed at "another's product."  *See Southland Sod Farms v.

27  Stover Seed Co.*, 108 F.3d 1134, 1139, 1145 (9th Cir. 1997) (nonactionable puffery includes a

28  "vague or highly subjective" "general assertion of superiority") (internal quotes omitted).  And

even if for argument's sake JFM is given every benefit of the doubt on the falsity of Johnstech's claims that it was "granted several hundred patents," and that customers must "indemnif[y] JF Technology against possible patent infringement litigation," JFM has not adduced any evidence indicating that these statements actually deceived or had the tendency to deceive a substantial segment of their audience, or that the deception was likely to influence a purchasing decision. *See Sidense*, 2012 WL 3545289, at *11. JFM's only proffer, beyond mere attorney argument, is a single customer email mentioning "some emails" causing confusion, and reference to the overseas sales evidence that has been excluded. Dkt. No. 119-9; Dkt. No. 118 at 8, 16. The customer email makes no mention of the Johnstech letter, and provides no support for a connection between the asserted confusion and any statements about Johnstech's patent portfolio, "low-quality copies," or JFM's indemnification practices.

**D. Unfair Competition Claim**

The California unfair competition law ("UCL") claim is equally untenable. JFM has not shown a genuine issue of material fact for any unfair, unlawful or fraudulent practices under the UCL.

On unfairness, JFM and Johnstech are competitors, and JFM has not even remotely shown that Johnstech's actions "threaten[] an incipient violation of an antitrust law, or violate[] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threaten[] or harm[] competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 187 (1999). JFM offers no proof whatsoever that Johnstech has the market power to unfairly exclude competition or competitors, has engaged in an illegal restraint of trade, or has done anything else that might violate the spirit of the antitrust laws. The UCL claim under this prong is a completely empty vessel.

On unlawfulness, JFM's claim fails because all of the alleged predicate offenses (defamation, false advertising, and intentional interference with prospective economic advantage) are deficient as a matter of law. JFM also provides no support or analysis whatsoever for a claim of UCL fraud, and in light of the Lanham Act analysis, such a claim seems wholly unsupportable.

While these reasons are enough to terminate JFM's UCL claim, the absence of evidence of actual financial losses seals its fate. Standing to assert a UCL claim requires proof that the claimant "suffered injury in fact" and "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The "lost money or property" requirement "requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011)). Without any proof that JFM incurred economic injury from the challenged conduct, it cannot demonstrate standing to bring this claim.

### E. Intentional Interference with Prospective Economic Advantage Claim

This claim is dismissed. Proof of "'economic harm to the plaintiff proximately caused by the defendant's wrongful act'" is a necessary element of the tort of intentional interference with prospective economic advantage. *See Falcon Stainless, Inc. v. Rino Cos., Inc.*, 572 F. App'x 483, 487 (9th Cir. 2014) (quoting *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008)). JFM has not explained how it can get around this requirement now that it has withdrawn all evidence of actual damages, and effectively abandoned this claim in its briefing. *See* Dkt. No. 145.

### CONCLUSION

The Court grants summary judgment to Johnstech on JFM's counterclaims for defamation, false advertising, unfair competition and intentional interference with prospective economic advantage. Because the claims fall clearly on their merits, the Court declines to address Johnstech's arguments on the *Noerr-Pennington* doctrine. The request for sanctions is granted in the form of an evidentiary bar.

**IT IS SO ORDERED.**

Dated: August 8, 2016

JAMES DONATO
United States District Judge