UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNSTECH INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> JF MICROTECHNOLOGY SDN BHD, <br><br> Defendant. | Case No. 14-cv-02864-JD <br><br> **ORDER ON MOTION FOR SUMMARY JUDGMENT RE INFRINGEMENT AND RELATED ISSUES** <br><br> Re: Dkt. No. 111 |

Plaintiff Johnstech International Corporation ("Johnstech") asserts all four claims of U.S. Patent No. 7,059,866 (the "'866 patent") against defendant JF Microtechnology SDN BHD ("JFM"). The '866 patent describes an apparatus for testing integrated circuit devices. Dkt. No. 68-1, Exh. A. The Court issued an order construing the claim terms disputed by the parties, Dkt. No. 110, and the parties filed cross-motions for summary judgment. This order addresses JFM's motion for summary judgment of no infringement, no inducement, no willfulness, and no entitlement to pre-suit damages. Dkt. No. 111. Summary judgment is granted and denied in part.

## DISCUSSION

**I.     SUMMARY JUDGMENT STANDARD**

The Court may grant summary judgment on a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party, and material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). On summary judgment, the "'evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). The Court

"may not weigh the evidence or make credibility determinations" on summary judgment.  *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009) (citing *Anderson*, 477 U.S. at 255).

Summary judgment of non-infringement requires the Court to determine whether the properly construed claims of the patent read on the accused device.  *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).  As the moving party who would not have the burden of proof on infringement at trial, JFM need only show the absence of evidence supporting Johnstech's infringement claims.  *Homeland Housewares, LLC v. Sorensen Research*, 581 F. App'x 869, 874 (Fed. Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Summary judgment of noninfringement is appropriate when, "on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee."  *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

If JFM makes this showing, the burden shifts to Johnstech to identify specific facts showing that a genuine issue remains for trial.  *See* Fed. R. Civ. P. 56(c)(1); *Homeland Housewares*, 581 F. App'x at 874 (citing *Celotex*, 477 U.S. at 324).  If Johnstech cannot raise issues that require a jury or judge to resolve at trial, summary judgment should be granted.  *Anderson*, 477 U.S. at 248 (internal quotation omitted).

Direct infringement may be proven either literally or under the doctrine of equivalents.  Where, as here, the claim at issue is a "means plus function" claim subject to 35 U.S.C. Section 112 ¶ 6,[1] literal infringement "'requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification.'"  *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004) (quoting *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)).  There is also a temporal element in play here.  Structural equivalence under Section 112 ¶ 6 may be found only when "the accused technology was known

---

[1] The 2011 America Invents Act (AIA) renumbered Section 112 ¶ 6 to Section 112(f).  Because the '866 patent predates the effective date of the AIA, the older section numbering will be used.

1   at the time of patenting and the functions are identical." *Ring & Pinion Serv. Inc. v. ARB Corp.*
2   *Ltd.*, 743 F.3d 831, 835 (Fed. Cir. 2014). If the accused technology did not exist at the time of
3   patenting, or does not perform the identical function, an infringement finding is still possible
4   under the somewhat confusingly named but nevertheless separate "doctrine of equivalents." *Id*. If
5   the accused structures "perform substantially the same function in substantially the same way with
6   substantially the same results" as the patented structures, an infringement finding is warranted by
7   the doctrine of equivalents. *Id*.

8   Defeating summary judgment of noninfringement under the doctrine of equivalents
9   requires "particularized testimony and linking argument on a limitation-by-limitation basis that
10  create[s] a genuine issue of material fact as to equivalents." *AquaTex Indus., Inc. v. Techniche*
11  *Solutions*, 479 F.3d 1320, 1328-29 (Fed. Cir. 2007). Although the equivalence of a structure is a
12  question of fact, the matter may be decided on summary judgment if no reasonable jury could find
13  that the accused and claimed structures are equivalent. *See Zelinski v. Brunswick Corp.*, 185 F.3d
14  1311, 1317 (Fed. Cir. 1999) (doctrine of equivalents); *Frank's Casing Crew*, 389 F.3d at 1378
15  (Section 112 ¶ 6 equivalence).

## II.  DIRECT INFRINGEMENT

17  JFM contends that it is entitled to summary judgment because its Zigma products do not
18  literally infringe the '866 claims. The Court grants summary judgment on this ground. But the
19  Court also finds that amendments made by Johnstech during patent prosecution do not bar
20  application of the doctrine of equivalents to the Zigma products, and that material issues of fact
21  exist as to whether the accused products are insubstantially different from the claimed technology.
22  The issue of infringement under the doctrine of equivalents will go to trial.

23  **A.  Literal infringement under Section 112 ¶ 6**

24  Based on the record presented to the Court, no reasonable jury could find that the accused
25  Zigma products literally infringe the asserted claims. Although fact issues remain on whether
26  their "relevant structure" performs "the identical function recited in the claim," their structure is
27  not "identical or equivalent to the corresponding structure in the specification" under Section 112
28  ¶ 6. *See Frank's Casing Crew*, 389 F.3d at 1378.

3

Claim 1 of the patent requires a "means for biasing said contact to said first orientation, wherein, as said contact is rolled between said first and said second orientations thereof, sliding motion of said second end of said contact across the terminal is substantially eliminated." The rest of the asserted claims depend from claim 1, and incorporate this required element. In its claim construction order, the Court found this limitation subject to Section 112 ¶ 6, and construed its function as "biasing the contact to the first orientation, wherein, as the contact is rolled between the first and second orientations, sliding motion of the second end of the contact across the terminal is substantially eliminated." Dkt. No. 110 at 8. The Court construed "substantially eliminated" as "approximately eliminated." *Id*. at 13. The Court construed the associated structure as "one or more elastomers (e.g., 30, 32 in Figure 1), a flat surface of the contact in engagement with the terminal pad (e.g., 29 in Figure 1), and a tail end of the contact in engagement with a wall of the housing (e.g., 6 in Figure 1)." *Id*. at 8.[2]

On the first prong of the analysis, material issues of fact exist as to whether the accused products perform the identical function as the "means for biasing" claim element. JFM argues that no reasonable jury could find that Zigma products perform this function because they do not "approximately eliminate[]" sliding motion. Dkt. No. 111 at 12-13. But a reasonable jury could find that the expert testing data, pointed to by both parties, establishes only that the accused Zigma product eliminates the sliding exhibited by the prior art less effectively than current Johnstech products do. *See, e.g.*, Dkt. No. 112-3. JFM hangs its hat on the idea that the estimated 24 microns of sliding in the Zigma amounts to 2400% of the 1 micron of sliding in current Johnstech products. Dkt. No. 111 at 6. But it does not show how this would foreclose a reasonable jury from finding that Zigma, nevertheless, did "substantially eliminate" the 191 microns of sliding estimated in prior art products. And JFM's protest that current Johnstech products have never been shown to practice the patent, Dkt. No. 135 at 8, further undermines its argument that comparing sliding in the parties' current products conclusively establishes non-infringement.

---

[2] In the claim construction order, the Court referred to the "flat surface of the contact in engagement with the terminal pad (e.g., 28 in Figure 1)." Dkt. No. 110 at 8. As the parties have pointed out, that feature is numbered 29 in the figure. The Court corrects the typo here.

4

Even so, Johnstech cannot show that the Zigma products have "identical or equivalent" structure under Section 112 ¶ 6. Johnstech has effectively conceded that it cannot establish "equivalent" structure under this section. It provides no evidence to contradict JFM's contention that Zigma "arose after the issuance of the '866 Patent." Dkt. No. 116-12 at 11 n.5.[3] If it did not exist at the time of patenting, Zigma may not be attacked as "an equivalent under the literal infringement analysis of § 112(f)." *See Ring & Pinion*, 743 F.3d at 835.

And Johnstech categorically cannot establish that a genuine issue of fact exists for trial on the question of whether Zigma has structure identical to the claimed structure. Johnstech's theory of infringement on this prong relies exclusively on the idea that the term "engagement" in the Court's claim construction "does not require direct contact." Dkt. No. 116-12 at 13. But the Court could not have been clearer in stating that its construction did not literally extend to structures with "indirect engagement," and that this argument was foreclosed:

> Because the patent does not show or disclose any structures in which sliding is "substantially eliminated" using an indirect engagement between the contact and housing wall, Johnstech goes too far in contending that the corresponding structure expressly covers "indirect" engagement between the contact and the wall. *See* 35 U.S.C. § 112 ¶ 6 (claim "construed to cover the corresponding structure, material, or acts described in the specification"); *see* Dkt. No. 101 at 26:4-10 (Johnstech argues for "indirect" connection). . . Although the Court is a bit skeptical the claims will ultimately reach that far, the current record does not foreclose the possibility that some structure that, although indirectly contacting the wall, might qualify as an equivalent. *See id*.

Dkt. No. 110 at 13.

None of Johnstech's arguments call into question the finding that the patent's claimed structure was limited to direct engagement, because the patent did not disclose, much less "link[] or associate[]" any other kind of structure to the relevant function. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). Johnstech's citations to Federal Circuit cases where "engagement" was construed more broadly are unavailing. No reasonable jury could find a

---

[3] A redacted copy of Johnstech's opposition brief is found at Dkt. No. 116-3.

1 structure with indirect engagement to be "identical" to the claimed structure, because the Court
2 has expressly construed the term as excluding such structures as a matter of law.

### B. Infringement under the doctrine of equivalents

Summary judgment is denied on the question of noninfringement under the doctrine of equivalents. JFM argues that prosecution history estoppel precludes application of the doctrine, and that, in any event, Johnstech cannot prove infringement under it. Dkt. No. 111 at 17. The Court finds that prosecution history estoppel in this case does not bar the possibility of infringement under the doctrine and that the issue will go to trial.

#### 1. Prosecution history estoppel

Prosecution history estoppel blocks a patentee from recapturing through the doctrine of equivalents the subject matter that the applicant surrendered during prosecution. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 734 (2002). The estoppel presumptively applies when the applicant makes an amendment related to patentability during prosecution, if that amendment narrows the literal scope of the claim, or narrows it in part and broadens it in part. *See Int'l Rectifier Corp. v. IXYS Corp.*, 515 F.3d 1353, 1358-59 (Fed. Cir. 2008). Here, Johnstech made a qualifying amendment when it simultaneously narrowed and broadened the nature of the "sliding motion" in claim 1, from being "precluded" as the contact is "moved," to being "substantially eliminated" as the contact is "rolled." Dkt. No. 72-1, Exh. 6 at 3. This amendment looks to be substantially related to patentability, in that Johnstech stated to the patent office that the language changes "more precisely distinguish the present application" from prior art cited by the patent office. *Id*. at 6; *see Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003). Consequently, Johnstech has presumptively "surrendered all territory between the original claim limitation and the amended claim limitation," and should not be allowed to apply doctrine of equivalents in that territory. *Festo*, 344 F.3d at 1367 (citing *Festo*, 535 U.S. at 740). Johnstech has not rebutted the presumption.

Still, this does not preclude all application of the doctrine of equivalents. To the contrary, the scope of the estoppel is confined by the nature of the narrowing amendment. *See Festo*, 535 U.S. at 737-38 ("There is no reason why a narrowing amendment should be deemed to relinquish

6

equivalents . . . beyond a fair interpretation of what was surrendered."); *see also Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291-92 (Fed. Cir. 2010) ("rationale for the amendment" had "only a tangential relation to" equivalency outside it). This proposition applies here because the territory surrendered by Johnstech's amendment -- from contacts wherein sliding is "precluded" as the contact is "moved," to those wherein sliding is "substantially eliminated" as the contact is "rolled" -- does not cover the range of equivalents that is relevant to the accused products.[4] Indeed, JFM asserts that its Zigma products allow an amount of sliding that is "well outside the range of what any reasonable jury could find to be 'approximately eliminated.'" Dkt. No. 111 at 13. Because the Zigma products admittedly lie "beyond a fair interpretation of what was surrendered" in prosecution, Johnstech may argue they infringe via the doctrine of equivalents. *See Festo*, 535 U.S at 738.

### 2. Evaluation of infringement under the doctrine of equivalents

Fact issues remain for trial in the application of the doctrine of equivalents to the Zigma products. JFM contends that Johnstech cannot establish infringement through the doctrine of equivalents because its infringement contentions and expert testimony lacked adequate elaboration of the theory. Dkt. No. 111 at 15-17. But the record contains enough evidence of Johnstech's positions on these issues to have put JFM fairly on notice. A reasonable jury could find that the product performs substantially the same function, in substantially the same way, with substantially the same result as the patented structure. *See AquaTex*, 479 F.3d at 1326, 1328-29. The Court has already determined that summary judgment cannot be granted on the question of whether the Zigma products perform the "identical" function as the claimed structure, so the question of whether they perform "substantially the same function" remains open as well. The evidentiary record shows that the "way" and "result" prongs of the analysis also defy summary judgment.

---

[4] JFM's arguments appear to seek the surrender of claim scope between the prior art of record and the amended claim language, rather than just the scope between the initial and amended claim language. *See* Dkt. No. 111 at 18. But the initial claim language here covered structures in which sliding was completely "precluded." Dkt. No. 72-1, Exh. 6 at 3. There is no "fair interpretation of what was surrendered" here that would lead to the conclusion that structures with amounts of sliding equivalent to, but in excess of, a "substantially eliminated" amount were surrendered by this amendment. Such a conclusion would contravene the plain language of the amendment.

1    JFM's main complaint appears to be that Johnstech should have revised its contentions and
2    expert reports after the Court construed the "means for biasing" element. As a threshold matter,
3    the Court notes that JFM did not petition the Court to amend its invalidity contentions or reports in
4    light of the Court's construction, although they would almost certainly contain similar formalistic
5    deficiencies. And formatting aside, the operation of the range of structures included in the "means
6    for biasing …" term (as construed by the Court) was presented in Johnstech's contentions and
7    supporting evidence for claims 1 and 4. *See, e.g.*, Dkt. No. 112-1 at 10-13, 16-20; Dkt. No. 112-9
8    ¶¶ 8, 11. Johnstech specifically explained in its June 22, 2015 claim construction reply brief that
9    its description of claim 4 showed how the "Zigma product clearly engages the rear wall of the
10   housing to substantially eliminate sliding of the contact." Dkt. No. 81 at 5. For these reasons,
11   JFM did not lack fair notice of these theories and has not shown it will suffer any prejudice if
12   Johnstech is allowed to go forward by combining the claim 1 and claim 4 sections of its
13   contentions and reports to meet the requirements of the Court's claim construction.

14   The Court also rejects JFM's suggestion that Johnstech's contentions and expert reports
15   are empty "boilerplate" statements. Johnstech's infringement contentions adequately express the
16   view that the contact tail in the Zigma products applies "force to the second elastomer," indirectly
17   engaging the wall thereby, and so the structure achieves the desired result of eliminating sliding in
18   the same way as the patent -- because that force on the elastomer and through it, on the wall,
19   "stabilize[s] rotation movement" and "dampen[s] excessive rotation force." Dkt. No.112-1 at 20.
20   Johnstech engineer Michael Andres' declaration similarly describes the role of the indirect
21   connection with the wall in reducing sliding: "The JF Zigma contact slides .095 mm, an amount
22   that is significantly reduced because the geometry of the contact, elastomers, and housing combine
23   to force the contact to roll forward while being actuated," Dkt. 112-9 ¶ 8, and because it includes a
24   protrusion that "engages the housing wall through the elastomer." *Id*. ¶ 11. He also states that the
25   Zigma's elastomer is "relatively large and high durometer (stiffness), which minimizes the
26   elastomer deflection and maximizes the engagement of the contact protrusion with the housing
27   wall." *Id.* Andres clearly connects these properties and the resultant behavior of the device to the
28

relevant claim language, meeting the substance of *AquaTex*'s requirement of testimony on the insubstantiality of differences.  See 479 F.3d at 1329.

JFM does not meaningfully dispute any of this.  Its engineer Kiat Lee in fact agreed that "not only is it a mechanical principle, that's just general logic, that if you put some kind of a stabilizing connection to a contact, it will slide less," and also "that's one of the reasons why the Zigma product has slow wearing on the load board… because it has an elastomer between the housing wall and the contact that … holds the contact in place."  Dkt No. 116-17 at 44.

In light of this evidence, a reasonable jury could find that the Zigma device infringes under the doctrine of equivalents.[5]  Summary judgment of noninfringement is denied.

**C.  Inducement**

Genuine issues of fact exist on induced infringement.  For induced infringement under 35 U.S.C. Section 271(b), Johnstech must show "both direct infringement and 'that the defendant possessed specific intent to encourage another's infringement.'"  *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part)).  The Court's finding that triable questions of fact are present for direct infringement bars summary judgment for JFM under this first element.

The element of JFM's intent also raises fact disputes that require trial.  The "requisite intent to induce infringement may be inferred from all of the circumstances," and "may be established through circumstantial evidence."  *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) (internal quotation omitted).  Johnstech highlights evidence that the parties met in April 2012, and claims that Johnstech employees accused the Zigma products of infringing patent rights relating to certain Johnstech products.  Dkt. No. 116-12 at 7, 22; Dkt. No. 116-4.  Johnstech also suggests JFM reverse-engineered the relevant Johnstech product, presenting

---

[5] Because the record evidence is sufficient for the doctrine of equivalents argument to go forward without reference to Johnstech's interchangeability theory, *see* Dkt. No. 116-12 at 19, the Court declines to address those arguments or JFM's related evidentiary objections.  *See* Dkt. No. 135 at 5.  The Court overrules JFM's objection to the Brown Report, Dkt. No. 135 at 4, given its extensive reliance on the report in its own arguments.  *See* Dkt. No. 111 at 5-6.  This ruling does not rely on the IDI documents that JFM seeks to exclude, Dkt. No. 135 at 3, or resolve that issue.

1   evidence that JFM studied the Johnstech product relevant to the patent and specifically designed
2   Zigma as a drop-in replacement for it.  Dkt. No. 116-12 at 4-5; Dkt. Nos. 116-14 to -17, -19.
3   Based on this evidence, a reasonable jury could find that JFM at best "willfully blinded itself to
4   the infringing nature" of Zigma, and should be held liable for encouraging its customers'
5   infringement of the patent in suit.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754,
6   770-71 (2011) (upholding a jury's determination of inducement based in part on a supplier's
7   deliberate copying of key features of a product); *Suprema, Inc. v. Int'l Trade Comm'n*, 626 F.
8   App'x 273, 281-82 (Fed. Cir. 2015) (affirming willful blindness finding where infringer was
9   aware of the patentee's prominence in the market, competitive products, patents related to the
10  patent in suit, and failed to obtain a non-infringement opinion from counsel).  Consequently, the
11  element of intent will also be resolved at trial.

### D. Willfulness

13  Recent events have overtaken JFM's request for summary judgment on willfulness.  JFM's
14  motion relied on an objective recklessness standard that the Supreme Court has specifically
15  abrogated in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923 (2016).  *See* Dkt. No.
16  111 at 24.  Consequently, the Court defers this issue until trial, where the parties can address the
17  Supreme Court's holding that the "subjective willfulness of a patent infringer, intentional or
18  knowing, may warrant enhanced damages, without regard to whether his infringement was
19  objectively reckless."  136 S.Ct. at 1933.

### E. Marking

21  Summary judgment is granted to JFM on the issue of pre-suit damages under Section 287.
22  To seek pre-suit damages, Johnstech must show either (1) that it marked the patented articles it
23  sold under the '866 patent with the patent number, or (2) affirmatively communicated a "'specific
24  charge of infringement'" to JFM, after which JFM continued to infringe.  *See Rosebud LMS Inc. v.
25  Adobe Sys. Inc.*, 812 F.3d 1070, 1074 (Fed. Cir. 2016) (quoting *Amsted Indus. Inc. v. Buckeye
26  Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) and 35 U.S.C. § 287(a)).  Johnstech
27  concedes it never marked its products with the relevant patent number, and cannot meet the first
28  test.  *See* Dkt. No. 116-12 at 23-25.  For the second test, Johnstech contends it "made a specific

United States District Court
Northern District of California

charge of infringement by a specific accused product, Zigma" when it met with JFM in April 2012, but concedes that the '866 patent number was not explicitly mentioned. Dkt. No. 116-12 at 23-24.

Johnstech's failure to specifically mention the '866 patent number in the April 2012 meeting sinks its pre-suit damages claim. The Federal Circuit has been quite clear that the patentee shoulders the burden of providing notice under Section 287(a). *See Amsted*, 24 F.3d at 187 ("The correct approach to determining notice under Section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer.") Accordingly, it "is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement" under this section. *Id*. Courts of this district have reached the same conclusion. *See, e.g., Apple, Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100, 1114 (N.D. Cal. 2013) ("Mere notice that some unknown patent allegedly covers some aspect of both the accused product and the competitor product does not provide meaningful notice as to what patented territory the accused device is alleged to infringe upon"), *rev'd in part on other grounds*, 786 F.3d 983 (Fed. Cir. 2015). Johnstech cites to a single, outdated district court case that came out differently, but the Court declines to follow it for these reasons.

## CONCLUSION

The Court grants summary judgment to JFM on the issues of no literal infringement and no pre-suit damages. The questions of infringement under the doctrine of equivalents, inducement, and willfulness will proceed to trial.

**IT IS SO ORDERED.**

Dated: August 11, 2016

JAMES DONATO
United States District Judge