UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHNSTECH INTERNATIONAL CORP.,

Plaintiff,

v.

JF MICROTECHNOLOGY SDN BHD

Defendant,

CASE NO.  14-cv-02864 JD

**PROPOSED INITIAL JURY INSTRUCTIONS**

**Judge:**  Hon. James Donato

The Court will read these initial instructions to the jury that is seated after voir dire on September 19, 2016.  The jury will also get a hardcopy of them for their binders.  These instructions are based on the set that the parties jointly agreed to, with some editing to improve clarity and usefulness for the jury.  Objections to the proposed instructions must be filed by **12:00 p.m. on September 14, 2016**.

**IT IS SO ORDERED**.

Dated: September 12, 2016

_____

JAMES DONATO
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONTENTS

INSTRUCTION NO. 1: DUTY OF JURY ................................................................................. 3

INSTRUCTION NO. 2: WHAT A PATENT IS AND HOW IT IS OBTAINED ......................... 4

INSTRUCTION NO. 3: SUMMARY OF CONTENTIONS .......................................................... 6

INSTRUCTION NO. 4: WHAT IS EVIDENCE........................................................................... 7

INSTRUCTION NO. 5: WHAT IS NOT EVIDENCE ................................................................. 8

INSTRUCTION NO. 6: DIRECT AND CIRCUMSTANTIAL EVIDENCE................................ 9

INSTRUCTION NO. 7: RULING ON OBJECTIONS ................................................................ 10

INSTRUCTION NO. 8: CREDIBILITY OF WITNESSES ........................................................ 11

INSTRUCTION NO. 9: DEPOSITION IN LIEU OF LIVE TESTIMONY ................................ 12

INSTRUCTION NO. 10: IMPEACHMENT EVIDENCE—WITNESSES................................... 13

INSTRUCTION NO. 11: NO TRANSCRIPT AVAILABLE/TAKING NOTES......................... 14

INSTRUCTION NO. 12: USE OF INTERROGATORIES ......................................................... 15

INSTRUCTION NO. 13: EXPERT OPINION............................................................................ 16

INSTRUCTION NO. 14: CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE.... 17

INSTRUCTION NO. 15: CHARTS AND SUMMARIES IN EVIDENCE................................. 18

INSTRUCTION NO. 16: INTERPRETATION OF CLAIMS ..................................................... 19

INSTRUCTION NO. 17: DIRECT INFRINGEMENT................................................................ 20

INSTRUCTION NO. 18: INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS. 21

INSTRUCTION NO. 19: MEANS-PLUS-FUNCTION CLAIMS .............................................. 22

INSTRUCTION NO. 20: INDUCING PATENT INFRINGEMENT .......................................... 23

INSTRUCTION NO. 21: WILLFUL INFRINGEMENT............................................................. 24

INSTRUCTION NO. 22: INVALIDITY—BURDEN OF PROOF ............................................. 25

INSTRUCTION NO. 23: WRITTEN DESCRIPTION REQUIREMENT ................................... 26

INSTRUCTION NO. 24: ENABLEMENT ................................................................................. 27

INSTRUCTION NO. 25: ANTICIPATION................................................................................. 28

INSTRUCTION NO. 26: OBVIOUSNESS................................................................................. 29

INSTRUCTION NO. 27: CONDUCT OF THE JURY ............................................................... 31

INSTRUCTION NO. 28: OUTLINE OF TRIAL .......................................................................... 32

INSTRUCTION NO. 29: QUESTIONS TO WITNESSES BY JURORS .................................... 33

1

## **INSTRUCTION NO. 1: DUTY OF JURY**

2

3

Ladies and gentlemen:  You are now the jury in this case.  It is my duty to instruct you on the law.  These instructions are initial instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

4

5

6

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

7

8

9

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

10

11

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

12

13

<u>Source</u>
Ninth Circuit Model Civil Jury Instruction 1.1C.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 2:  WHAT A PATENT IS AND HOW ONE IS OBTAINED

2

3

This case involves a dispute relating to three United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

4

5

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

6

7

8

9

To obtain a patent one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

10

11

12

13

14

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the examiner considered; this list is called the "cited references."

15

16

17

18

19

20

21

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material becomes available to the public no later than the date when the patent issues.

22

23

24

25

26

27

28

Case No. 14-cv-02864 JD

- 4 -

PROPOSED INITIAL
JURY INSTRUCTIONS

1
2
3

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

4
5

<u>Source</u>
Model Patent Jury Instructions for the Northern District of California A.1.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### INSTRUCTION NO. 3: SUMMARY OF CONTENTIONS

2

To help you follow the evidence at trial, I will now give you a summary of each party's position.

3

4

The parties in this case are the plaintiff, Johnstech, and the defendant, JF Microtechnology.  The case involves one United States patent.  The patent involved is U.S. Patent No. 7,059,866.  For convenience, the parties and I will refer to this patent as the '866 Patent, these being the last three digits of the patent number.  We will also refer to it as the "patent-in-suit."

5

6

This case relates generally to technology for testing semiconductor chips.  Johnstech filed suit in this court seeking money damages from JF Microtechnology for allegedly infringing the patent-in-suit by making, using, selling, and offering for sale products, features, or services that Johnstech argues are covered by Claims 1 through 4 of the '866 Patent.  These are the asserted claims of the patent-in-suit. Johnstech also argues that JF Microtechnology has actively induced infringement of these claims of the patent by others.  The products that are alleged to infringe the patent-in-suit are JF Microtechnology's Zigma™ products.

7

8

9

10

11

JF Microtechnology denies that it has infringed the asserted claims.  JF Microtechnology also contends each of the asserted claims is invalid.  Invalidity is a defense to infringement.

12

13

Your job is to decide whether the asserted claims of the '866 patent have been infringed and whether any of the asserted claims of the patent are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Johnstech to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.

14

15

16

17

Before you decide whether JF Microtechnology has infringed the claims of the '866 patent or whether the claims are invalid, you will need to understand the patent claims.  The patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

18

19

20

I have already determined the meaning of certain terms of the claims of the patent-in-suit.  You have been given a document reflecting those meanings.  You are to apply my definitions of these terms throughout this case.  My interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  Those issues are yours to decide.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

21

22

23

24

Source
Model Patent Jury Instructions for the Northern District of California A.3 and B.1.

25

26

27

28

- 6 -

PROPOSED INITIAL
JURY INSTRUCTIONS

1

## INSTRUCTION NO. 4: WHAT IS EVIDENCE

2

The evidence you are to consider in deciding what the facts are consists of:

3

      1.      the sworn testimony of any witness;

4

5

      2.      the exhibits which were received into evidence; and

6

      3.      any facts to which the lawyers have agreed.

7

<u>Source</u>
Ninth Circuit Model Jury Instruction 1.6.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>INSTRUCTION NO. 5: WHAT IS NOT EVIDENCE</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

    1.    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence. But these arguments and statements are not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

    2.    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

    3.    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

    4.    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

<u>Source</u>
Ninth Circuit Model Civil Jury Instruction 1.7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INSTRUCTION NO. 6: DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

<u>Source</u>
Ninth Circuit Model Civil Jury Instruction 1.9.

1

2   <u>**INSTRUCTION NO. 7: RULING ON OBJECTIONS**</u>

3   There are rules of evidence that control what can be received into evidence.  When lawyers ask questions or offer exhibits into evidence, and a lawyer on the other side thinks that it is not

4   permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question will be answered or the exhibit received.  If I sustain the objection, the question will not

5   answered, and the exhibit will not be received.  Whenever I sustain an objection to a question, you must ignore the question and not try to guess what the answer might have been.

6
    Sometimes I may have order that evidence be stricken from the record and that you disregard or
7   ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

8
    <u>Source</u>
9   Ninth Circuit Model Civil Jury Instruction 1.10.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>INSTRUCTION NO. 8: CREDIBILITY OF WITNESSES</u>

2

3 In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness said, or part of it, or none of it.

4 Proof of a fact does not necessarily depend on the number of witnesses who testified about it.

5 In considering the testimony of any witness, you may take into account:

6         1.       the opportunity and ability of witness to see or hear or know he things testified to;

7         2.       the witness's memory;

8         3.       the witness's manner while testifying;

9         4.       the witness's interest in the outcome of the case and any bias or prejudice;

10        5.       whether other evidence contradicted the witness's testimony;

11        6.       the reasonableness of the witness's testimony in light of all the evidence; and

12        7.       any other factors that bear on believability.

13 Sometimes a witness may say something that is not consistent with something else he or she said.

14 Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but

15 remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

16

17 However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you

18 think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

19

20 The weight of the evidence about a fact does not necessarily depend on the number of witnesses who testify about it.  What is important is how believable the witnesses were, and how much

21 weight you think their testimony deserves.

22 <u>Source</u>
Ninth Circuit Model Civil Jury Instruction 1.11.

23

24

25

26

27

28

- 11 -

1

## **INSTRUCTION NO. 9: DEPOSITION IN LIEU OF LIVE TESTIMONY**

2

3

At times during the trial, you may hear testimony by a witness in the form of previously recorded deposition rather than live here in court.  A deposition is the sworn testimony of a witness taken before trial.  The witness was placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers were recorded.

4

5

You should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

6

7

Source
Ninth Circuit Model Civil Jury Instruction 2.4.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 10: IMPEACHMENT EVIDENCE—WITNESSES

2

3

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

4

Source
Ninth Circuit Model Civil Jury Instruction 2.9.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 11: NO TRANSCRIPT AVAILABLE/TAKING NOTES

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not get a transcript or recording of the trial later during your deliberations.  You should pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

To help you remember the evidence, you can take notes during the trial.  Your notebook has lined paper for notes.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you. When you leave each day, leave the binder and any notes in the jury room.  No one will read or look at them.  At the end of the case, they will be destroyed in a secure fashion.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

Source
Ninth Circuit Model Civil Jury Instructions 1.13 and 1.14.

1

## INSTRUCTION NO. 12: USE OF INTERROGATORIES

2

3

Evidence may be presented to you in the form of an answer to a type of question called an interrogatory.  The answer to an interrogatory is given in writing and under oath before the trial in response to questions that were submitted under established court procedures.  You should consider the answers in the same way as if they were made from the witness stand.

4

5

Source
Ninth Circuit Model Civil Jury Instruction 2.11.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 13: EXPERT OPINION

2

3

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

4

5

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

6

Source
7
Ninth Circuit Model Civil Jury Instruction 2.13.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 14: CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source
Ninth Circuit Model Civil Jury Instruction 2.14.

1

## INSTRUCTION NO. 15: CHARTS AND SUMMARIES IN EVIDENCE

2

3

4

Certain charts and summaries may be received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

5

6

Source
Ninth Circuit Model Civil Jury Instruction 2.15.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 16: INTERPRETATION OF CLAIMS

Before you decide whether JF Microtechnology has infringed the claims of the '866 patent or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

I have determined that the preamble of Claim 1 is a limitation of the claims. I have interpreted the meaning of the language in the claims as follows:

| Term | Asserted | Construction |
|---|---|---|
| "...engagable by ... in engagement with ... unengaged by ... engaged by" | Claim 1 | "... able to come together with ...connected with ... unconnected with ... connected by" |
| "means for biasing said contact to said first orientation, wherein, as said contact is rolled between said first and said second orientations thereof, sliding motion of said second end of said contact across the terminal is substantially eliminated" | Claim 1 | This phrase is construed as a means-plus-function claim limitation.<br><br>The function is:<br>biasing the contact to the first orientation, wherein, as the contact is rolled between the first and second orientations, sliding motion of the second end of the contact across the terminal is substantially eliminated<br><br>The corresponding structure is:<br>one or more elastomers (e.g., 30, 32 in Figure 1), a flat surface of the contact in engagement with the terminal pad (e.g., 29 in Figure 1), and a tail end of the contact in engagement with a wall of the housing (e.g., 6 in Figure 1) |
| "substantially eliminated" | Claim 1 | Approximately eliminated |

Source
Model Patent Jury Instructions for the Northern District of California 2.1.

1

## INSTRUCTION NO. 17: DIRECT INFRINGEMENT

2

3
A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

4

5

6

7
Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether JF Microtechnology has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the '866 patent.  If it has, it infringes. You, as the jury, will make that decision.

8

9

10

11

12
With one exception, you must consider each of the asserted claims of the patent individually, and decide whether JF Microtechnology's products infringe that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims also have been infringed.

13

14

15

16
You will hear evidence about Johnstech's commercial products and JF Microtechnology's accused products.  In deciding the issue of infringement you may not compare JF Microtechnology's accused products to Johnstech's commercial products.  You need to compare JF Microtechnology's accused products to the claims of the '866 patent when making your decision about infringement.  Your infringement decision must be based on that comparison alone.

17

18
Whether or not JF Microtechnology knew its products infringed or even knew of the patent does not matter in determining direct infringement.

19

20
In this case, Johnstech must prove that the asserted claims are infringed under the "doctrine of equivalents."

21
Source
Model Patent Jury Instructions for the Northern District of California 3.2.

22

23

24

25

26

27

28

1
2

## INSTRUCTION NO. 18: INFRINGEMENT UNDER THE DOCTRINE OF

## EQUIVALENTS

3
4
5
6
7

Under the doctrine of equivalents, a product can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim.  If the product is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has either an identical or equivalent part to that individual claim requirement.

8
9

A part is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

10
11

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

12
13
14
15

One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

16
17
18
19
20
21

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement.  The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents.  However, known interchangeability may support a conclusion that the difference between the part or step in the product, feature or service and the claim requirement is not substantial.  The fact that a part or step of the product, feature or service performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

22
23
24
25

Johnstech contends that the accused Zigma™ product includes all of the identical requirements of the '866 patent claims with one exception, for which it relies on the doctrine of equivalents.  That exception is the structure for performing the function of the "means for biasing" requirement.  Johnstech must show that the structure in the Zigma™ product it contends performs the function of the "means for biasing" requirement is equivalent to the structure disclosed in the '866 patent under the standard I will explain next.

26

Source
Model Patent Jury Instructions for the Northern District of California 3.4, 3.6.

27
28

- 21 -

PROPOSED INITIAL
JURY INSTRUCTIONS

1

## INSTRUCTION NO. 19: MEANS-PLUS-FUNCTION CLAIMS

2

3    Each of the claims of the '866 patent are written in a particular form called the "means-plus-
function" form.  A means-plus-function claim covers only the specific structure disclosed in a
patent specification for performing the claimed function and the equivalents of those specific
structures that perform the claimed function.  A means-plus-function claim does not cover all
possible structures that could be used to perform the claimed function.

4

5

6    As an example, the term "means for processing data" can be understood to cover many different
ways of processing data, for example using a computer or calculator, or just a pencil and paper or
simply done mentally.  But because the phrase is a means-plus-function requirement, we interpret
that phrase not to cover every possible means for processing data, but instead to cover the actual
means disclosed in the patent for processing data and other means that are equivalent to it.

7

8

9    For purposes of this trial, I have interpreted each means-plus-function requirement for you and
identified the structure in the patent specification that corresponds to these means-plus-function
requirements.  Specifically, I have determined that:

10

11

12    One or more elastomers (e.g., 30, 32 in Figure 1), a flat surface of the contact in engagement with
the terminal pad (e.g., 29 in Figure 1), and a tail end of the contact in engagement with a wall of
the housing (e.g., 6 in Figure 1) is the structure that performs the function of "biasing the contact
to the first orientation, wherein, as the contact is rolled between the first and second orientations,
sliding motion of the second end of the contact across the terminal is substantially eliminated" that
is identified in the means-plus-function requirement of claim 1.

13

14

15

16    In deciding if Johnstech has proven that JF Microtechnology's product includes structure covered
by a means-plus-function requirement, you must first decide whether the product has any
structure that performs the function I just described to you.  If not, the claim containing that
means-plus-function requirement is not infringed.

17

18

19    If you find that the JF Microtechnology's Zigma™ product does have structure that performs the
claimed function, you must then determine whether that structure is equivalent to that structure
identified in the patent under the "doctrine of equivalents."  If they are equivalent, the means-
plus-function requirement is satisfied by that structure of the Zigma™ product.  If all the other
requirements of the claim are satisfied, the Zigma™ product infringes the claim.

20

21

22    Source
Model Patent Jury Instructions for the Northern District of California 3.5.

23

24

25

26

27

28

PROPOSED INITIAL
JURY INSTRUCTIONS

1

## INSTRUCTION NO. 20: INDUCING PATENT INFRINGEMENT

2

3

Johnstech argues that JF Microtechnology has actively induced another entity or person to infringe claims 1, 2, 3 and 4 the '866 patent.  Before you can find induced infringement, you must first find that direct infringement has occurred.  If there is no direct infringement, there can be no induced infringement.

4

5

To be liable for inducement of infringement, JF Microtechnology must have:

6

1.    intentionally taken action that actually induced direct infringement;

7

2.    been aware of the '866 patent; and

8

3.    known that the acts it was causing would infringe the patent.

9

10

JF Microtechnology may be considered to have known that the acts it was causing would infringe the '866 patent if it subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

11

12

13

In deciding whether JF Microtechnology induced infringement, you may consider whether JF Microtechnology actually believed that the acts it encouraged did not infringe the patent.

14

Source
Model Patent Jury Instructions for the Northern District of California 3.9.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 14-cv-02864 JD

- 23 -

PROPOSED INITIAL
JURY INSTRUCTIONS

1

## <u>INSTRUCTION NO. 21: WILLFUL INFRINGEMENT</u>

2

Johnstech contends that JF Microtechnology willfully infringed Johnstech's patent.

3

4

To prove willful infringement, Johnstech must persuade you JF Microtechnology infringed a valid claim of Johnstech's patent.  Johnstech must also persuade you that it is more likely than not that JF Microtechnology had knowledge of the patent and acted with reckless disregard of the claims of Johnstech's patent. You must base your verdict on the knowledge and actions of JF Microtechnology at the time the infringement happened.

5

6

7

Infringement alone is not enough to prove willfulness.

8

To demonstrate "reckless disregard," Johnstech must persuade you that JF Microtechnology actually knew, or it was so obvious that JF Microtechnology should have known, that its actions constituted infringement of a valid patent.

9

10

In deciding whether JF Microtechnology acted with reckless disregard for Johnstech's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

11

12

A factor that may be considered as evidence that JF Microtechnology was not willful is whether JF Microtechnology acted in a manner consistent with the standards of commerce for its industry.

13

14

A factor that may be considered as evidence that JF Microtechnology was not willful is whether JF Microtechnology had a reasonable belief at the time of the alleged infringement that its products did not infringe any of the asserted claims of the patent.

15

16

A factor that may be considered as evidence that JF Microtechnology was willful is whether JF Microtechnology intentionally copied a product of Johnstech covered by the patent.

17

18

<u>Source</u>
Model Patent Jury Instructions for the Northern District of California 3.10; *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923 (2016).

19

20

21

22

23

24

25

26

27

28

- 24 -

1

## INSTRUCTION NO. 22: INVALIDITY—BURDEN OF PROOF

2

3

I will now instruct you on the rules you must follow in deciding whether JF Microtechnology has proven that the asserted claims of the patent-in-suit are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, JF Microtechnology must persuade you that it is highly probable that the claim is invalid.

4

5

6

During this case, JF Microtechnology has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the patent-in-suit. JF Microtechnology contends that this prior art invalidates certain claims of the patent-in-suit. In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the patent-in-suit.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make JF Microtechnology's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

7

8

9

10

11

Source
Model Patent Jury Instructions for the Northern District of California 4.1.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 23: WRITTEN DESCRIPTION REQUIREMENT

2

3  A patent claim is invalid if the patent does not contain an adequate written description of the
claimed invention.  The purpose of this written description requirement is to demonstrate that the
4  inventor was in possession of the invention at the time the application for the patent was filed,
even though the claims may have been changed or new claims added since that time.  The written
5  description requirement is satisfied if a person of ordinary skill in the field reading the original
patent application at the time it was filed would have recognized that the patent application
6  described the invention as claimed, even though the description may not use the exact words
found in the claim.  A requirement in a claim need not be specifically disclosed in the patent
7  application as originally filed if a person of ordinary skill would understand that the missing
requirement is necessarily implied in the patent application as originally filed.

8

Source
9  Model Patent Jury Instructions for the Northern District of California 4.2a.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 24: ENABLEMENT

A patent claim is invalid if the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention.  This is known as the "enablement" requirement.

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation.  In determining whether excessive experimentation is required, you may consider the following factors:

      the scope of the claimed invention;

      the amount of guidance presented in the patent;

      the amount of experimentation necessary;

      the time and cost of any necessary experimentation;

      how routine any necessary experimentation is in the field of testing integrated circuits;

      whether the patent discloses specific working examples of the claimed invention;

      the nature and predictability of the field; and

      the level of ordinary skill in the field of testing integrated circuits.

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed.

Source
Model Patent Jury Instructions for the Northern District of California 4.2b.

## **INSTRUCTION NO. 25: ANTICIPATION**

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous publications or patents are called "prior art references."  If a patent is not new we say it is "anticipated" by a prior art reference.

The description in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of integrated circuit testing or manufacturing looking at that one reference would be able to make and use the claimed invention.

JF Microtechnology alleges that the following references anticipate the claims of the '866 patent:

     1. The '355 Ludwig Patent;

     2. The '749 Rathburn Patent;

     3. The '612 Hasegawa Patent; and

     4. The '396 Rathburn Patent.

JF Microtechnology can show that a patent claim was not new if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before April 23, 2003.

Source
Model Patent Jury Instructions for the Northern District of California 4.3a1.

1

## **INSTRUCTION NO. 26: OBVIOUSNESS**

2

3   Not all innovations are patentable.  A patent claim is invalid if the claimed invention would
    have been obvious to a person of ordinary skill in the field at the time the claimed invention was
4   made.  This means that even if all of the requirements of the claim cannot be found in a single
    prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a
5   person of ordinary skill in the field of integrated circuit testing or manufacturing who knew
    about all this prior art would have come up with the claimed invention.

6

7   The ultimate conclusion of whether a claim is obvious should be based upon your determination
    of several issues of fact.

8

9   The parties agree that the level of ordinary skill in the field would be a person having at least an
    undergraduate degree in Mechanical or Electrical Engineering and three years of experience
10  working in the development of integrated circuit testing or integrated circuit manufacturing, or
    an equivalent combination of education and experience in related fields.

11  First, you must decide the scope and content of the prior art.  Johnstech and JF Microtechnology
    disagree about whether (1) the '355 Ludwig Patent; (2) the '749 Rathburn Patent; (3) the '612
12  Hasegawa Patent; (4) the '396 Rathburn Patent; (5) the '801 Johnson Patent; and (6) the Brandt
    '908 Publication should be included in the prior art you use to decide the validity of Claims 1-4
13  of the '866 patent.  In order to be considered as prior art to the '866 patent, these references
    must be reasonably related to the claimed invention of that patent.  A reference is reasonably
14  related if it is in the same field as the claimed invention or is from another field to which a
    person of ordinary skill in the field would look to solve a known problem.
15

16  Then, you must decide what difference, if any, existed between the claimed invention and the
    prior art.
17

18  Finally, you should consider any of the following factors that have been shown by the evidence:

19      (1)    commercial success of a product due to the merits of the claimed invention;

20      (2)    a long felt need for the solution provided by the claimed invention;

21      (3)    unsuccessful attempts by others to find the solution provided by the claimed
22             invention;

23      (4)    copying of the claimed invention by others;

24      (5)    unexpected and superior results from the claimed invention;

25      (6)    acceptance by others of the claimed invention as shown by praise from others in
26             the field or from the licensing of the claimed invention;

27      (7)    other evidence tending to show nonobviousness;

28

Case No. 14-cv-02864 JD

- 29 -

(8)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

(9)    other evidence tending to show obviousness.

The presence of any of factors 1-7 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factors 8-9 as appropriate may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether JF Microtechnology has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

Source
Model Patent Jury Instructions for the Northern District of California 4.3b.

1

## **INSTRUCTION NO. 27: CONDUCT OF THE JURY**

2

I will now say a few words about your conduct as jurors.

3

It is important that you keep an open mind throughout the trial and consider all of the evidence
4
received in the case.  Do not decide what the verdict should be until you and your fellow jurors
have completed your deliberations at the end of the case.

5

It is also important that you decide this case based only on the evidence received in the case and
6
on my instructions about the law that applies.  You must not under any circumstance be exposed
to any other information about the case or to the issues it involves during the course of your jury
7
duty.  Until the end of the case or unless I tell you otherwise:

8

Do not communicate with anyone in any way and do not let anyone else communicate
9
with you in any way about the merits of the case or anything to do with it.  That means no
communications in person, in writing, on the phone or on any electronic or online
10
platform, such as e-mail, text messages, Twitter, Snapchat, Facebook, Google+, LinkedIn,
YouTube, or any social media of any type.  This applies to communicating with your
11
fellow jurors, until I give you the case for deliberation, and to communicating with
12
everyone else including your family members, your employer, the media or press, and the
people involved in the trial.  You can tell your family and your employer that you have
13
been seated as a juror in the case, but nothing more than that.  If you are asked or
approached in any way about your jury service or anything about this case, you must say
14
that you have been ordered not to discuss the matter.  You must also let me know
15
immediately if anyone tries to ask or approach you about your jury service or the case.

16

You will receive here in court all the evidence and legal instruction you may properly
consider to return a verdict.  Do not read, watch, or listen to any news or media accounts
17
or commentary about the case or anything to do with it.  Do not do any independent
research on your own, such as searching the Internet or consulting any reference materials.
18
Do not do anything to try to learn about the case on your own.

19

These restrictions are very important and the law requires them to make sure that the parties have
20
a fair trial based on the same evidence that each party has had an opportunity to address.  A juror
who violates these restrictions jeopardizes the fairness of these proceedings.  If you believe
21
another juror has been exposed to any outside information, you need to let me know right away.

22

Source
23
Ninth Circuit Model Civil Jury Instruction 1.12.

24

25

26

27

28

1

## INSTRUCTION NO. 28: OUTLINE OF TRIAL

2

3

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

4

5

The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true than not.  On other issues you must use a higher standard and decide whether it is highly probable that something is true.

6

7

8

Johnstech will present its evidence on its contention that some of the claims of the patent-in-suit have been infringed by JF Microtechnology.  These witnesses will be questioned by JF Microtechnology's counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness.  To prove infringement of any claim, Johnstech must persuade you that it is more likely than not that JF Microtechnology has infringed that claim.

9

10

11

12

After Johnstech has presented its witnesses, JF Microtechnology will call their witnesses, who will also be examined and cross-examined.  JF Microtechnology will present its evidence that the claims of the patent-in-suit are invalid.  To prove invalidity of any claim, JF Microtechnology must persuade you that it is highly probable that the claim is invalid.  In addition to presenting its evidence of invalidity, JF Microtechnology will put on evidence responding to Johnstech's infringement contentions.

13

14

15

16

Because the evidence will be presented over time, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions.  Keep an open mind throughout the entire trial.  If you need to speak with me about anything, simply give a signed note to my courtroom deputy to give to me.

17

18

19

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case.  Closing arguments are not evidence.  After the closing arguments and instructions, you will then decide the case.

20

21

Source
Model Patent Jury Instructions for the Northern District of California A.5.

22

23

24

25

26

27

28

Case No. 14-cv-02864 JD

PROPOSED INITIAL
JURY INSTRUCTIONS

1

## INSTRUCTION NO. 29: QUESTIONS TO WITNESSES BY JURORS

2

3

You will be allowed to propose written questions to witnesses after the lawyers have completed
their questioning of each witness.  You may propose questions in order to clarify the testimony,
but you are not to express any opinion about the testimony or argue with a witness.  If you
propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

4

5

6

Before I excuse each witness, I will offer you the opportunity to write out a question on a form
provided by the court.  Do not sign the question.  I will review the question with the attorneys to
determine if it is legally proper.

7

8

There are some proposed questions that I will not permit, or will rephrase from the wording
submitted you use.  This might happen either due to the rules of evidence or other legal reasons,
or because the question is expected to be answered later in the case.  If I do not ask a proposed
question, or if I rephrase it, do not speculate as to the reasons.  Do not give undue weight to
questions you or other jurors propose.  You should evaluate the answers to those questions in the
same manner you evaluate all of the other evidence.

9

10

11

12

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do
so.  It will often be the case that a lawyer has not asked a question because it is legally
objectionable or because a later witness may be addressing that subject.

13

14

Source
Ninth Circuit Model Civil Jury Instruction 1.16.

15

16

17

18

19

20

21

22

23

24

25

26

27

28