UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNSTECH INTERNATIONAL CORP., <br> Plaintiff, <br> v. <br> JF MICROTECHNOLOGY SDN BHD, <br> Defendant. | Case No. 3:14-cv-02864-JD <br><br> **ORDER RE RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; NEW TRIAL** <br><br> Re: Dkt. No. 267 |

In September 2016, a jury found that defendant JF Microtechnology SDN BHD ("JFM") had willfully infringed U.S. Patent No. 7,059,866 (the "'866 patent") held by plaintiff Johnstech International Corp. ("Johnstech"). Dkt. No. 242. The jury awarded $636,807 in lost profits. A motion for a permanent injunction and a motion for attorney's fees and enhanced damages are pending. Dkt. Nos. 287, 303.

JFM seeks to overturn the jury verdict under Federal Rule of Civil Procedure 50, and in the alternative requests a new trial under Rule 59. JFM's arguments are identical under both rules, and the requests are denied.

**BACKGROUND**

The events leading to trial were straightforward. Johnstech sued JFM for patent infringement in 2014 on the allegation that JFM's Zigma device infringes the '866 patent. Dkt. No. 1. The '866 patent describes a test contactor used to test integrated circuit devices. The test contactor is comprised of conductive "contacts" inside a "housing." The contacts are positioned between "leads" on the integrated circuit device to be tested, and "terminals or pads" on the "load board" of a testing machine. The integrated circuit is pressed against the test contactor, which deforms the elastomers holding the contacts and rotates the contacts so that they touch both the

integrated circuit's leads and the testing machine's load board terminals. The '866 patent claims to improve the prior art by allowing the contact to press against the integrated circuit leads and the load board terminals with sufficient force while minimizing wear to the load board. *See Johnstech Int'l Corp. v. JF Microtechnology Sdn Bhd*, No. 14-CV-02864-JD, 2016 WL 631936, at *1 (N.D. Cal. Feb. 17, 2016) ("Claim Construction Order").

During claim construction, the Court found that the asserted claims included "means-plus-function" claims subject to 35 U.S. Code Section 112 Paragraph 6.[1] *Id.* at *2. Among other terms, the Court construed the "means for biasing" term in claim 1 as having the function of "biasing the contact to the first orientation, wherein, as the contact is rolled between the first and second orientations, sliding motion of the second end of the contact across the terminal is substantially eliminated" and the structure of "one or more elastomers . . . , a flat surface of the contact in engagement with the terminal pad . . . , and a tail end of the contact in engagement with a wall of the housing." *Id.* at *6-*8. The Court construed "substantially eliminated" as "approximately eliminated" and found that "engagement" required direct engagement between the contact and the housing wall. *Id.* at *8.

On JFM's motion for summary judgment, the Court concluded that Zigma does not literally infringe the '866 patent because Zigma's contact is not directly engaged with the housing wall. *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-CV-02864-JD, 2016 WL 4242220, at *2 (N.D. Cal. Aug. 11, 2016). In September 2016, the parties had a six-day trial on whether Zigma infringes the '866 patent under the doctrine of equivalents. *See id.* at *4. At the close of evidence, JFM moved for judgment as a matter of law under Rule 50(a) on infringement and Johnstech's calculation of damages. Tr. at 811-13;[2] Fed. R. Civ. P. 50(a). The Court took JFM's motion under submission.

---

[1] The '866 application was filed in 2004, so the Court refers to the version of Section 112 that existed before the America Invents Act took effect. The AIA replaced Paragraph 6 of Section 112 with Section 112(f).

[2] "Tr." refers to the trial transcripts, available at Dkt. Nos. 227, 229, 231, 233, 238, and 240.

2

The jury returned a verdict for Johnstech on direct infringement, induced infringement, willful infringement, and validity, and awarded Johnstech $636,807 in lost profits. Dkt. No. 242. At the parties' request, post-trial motions and other proceedings were put on hold for almost a year as the parties discussed a settlement. Dkt. Nos. 246, 248, 264. While settlement discussions were ongoing, JFM substituted in new counsel. Dkt. No. 252. The settlement talks did not produce an agreement, and the parties began filing post-trial requests in June 2017. This order resolves JFM's motions for judgment as a matter of law or, in the alternative, a new trial, under Rule 50(b) and Rule 59(a). Dkt. No. 267. Johnstech has since filed a permanent injunction motion and a motion for fees and enhanced damages, which remain pending. Dkt. Nos. 287, 303. The Court will address those issues in separate proceedings.

## DISCUSSION

### I. Judgment as a Matter of Law

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). The same holds for a motion for a new trial. *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1312 (Fed. Cir. 2010).

Under Rule 50, post-verdict judgment as a matter of law is not appropriate unless "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). A party seeking judgment as a matter of law must show that the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). The Court is required to "draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1069 (9th Cir. 2015) (citing *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008)). The Court's review on a post-trial JMOL

3

motion is limited to arguments that were raised in the movant's pre-verdict motion; arguments not raised before the case was submitted to the jury are waived. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003); *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012) (law of regional circuit determines Rule 50 waiver).

An initial problem with JFM's 50(b) motion is that it makes several arguments that were not properly preserved for post-trial consideration. JFM challenges the jury's findings of infringement, willfulness, and validity, and also argues that Johnstech was not entitled to lost profits as a matter of law. But JFM made no mention at all of willfulness, validity, or the form of damages in its 50(a) motion during trial. Tr. at 811-13. Those arguments are waived for JMOL purposes. In addition, JFM acknowledges that it waived any objections to damages in the form of lost profits because it expressly agreed to the lost profits jury instructions, and concedes that the damages award was based on substantial evidence presented at trial. Dkt. No. 299 at 8-10. Consequently, the Court will consider only the Rule 50 argument on the infringement verdict.

JFM says the jury's finding of infringement under the doctrine of equivalents is without substantial evidentiary support because Zigma's structure does not satisfy the "means for biasing" requirement in claim 1. Infringement is a question of fact, and the Court's review of the jury's finding is limited to whether there was substantial evidence in the record to support it. *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1040 (Fed. Cir. 2016).

The record amply establishes a sound basis for the infringement verdict, and JFM has not shown anything to the contrary. As a threshold matter, the infringement challenge is undermined by JFM's lack of adherence to the Rule 50 standard. Rather than focusing on the sufficiency of the evidence admitted at trial, JFM treats the verdict as an open question effectively subject to de novo review. Most of its arguments, for example, go not to the sufficiency of the evidence but merely to debating the jury's decision to accept Johnstech's evidence over JFM's. JFM also rehashes arguments rejected in claim construction and summary judgment without any attempt to justify reconsideration on the basis of developments at trial. This overall approach is not the optimal way to challenge a verdict under Rule 50.

Looking past this impediment, JFM does not raise any meaningful question of insufficient evidence. "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial. One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product. The function-way-result test is particularly suitable for analyzing the equivalence of mechanical devices." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).

JFM's primary argument is that the evidence at trial showed that the Zigma's indirect engagement design was an intentional choice to achieve benefits unrelated to reducing load board wear. It is true that JFM witnesses testified that indirect engagement promotes some non-zero sliding in order to shorten the wiping stroke between the integrated circuit and the contact, and reduces damage to the housing wall. But JFM overlooks the abundance of other evidence the jury heard, too. This included testimony about JFM's patent, which did not mention the benefit of a shorter wiping stroke but did state that the rear elastomer between the contact and the housing wall "provides a counter force . . . to protect the load-board from wear." TX 12 at 6:42-44. It also included testimony on cross examination by JFM's founder Wei Kuong Foong, who agreed that the JFM patent "describes using the rear elastomer to minimize wear to the load board." Tr. at 553. In addition, Johnstech witness Michael Andres testified that Johnstech's ROL 200 contactor practices the '866 patent and can handle 20 to 30 million insertions before housing wall erosion becomes an issue, whereas the housing wall in Zigma and other competitors can withstand only 2 to 6 million insertions. Tr. at 250-51.

These and other portions of the trial record demonstrate that the parties contested whether indirect engagement in Zigma was intended to produce benefits unrelated to reducing load board wear. The jury properly resolved the factual dispute, and the existence of some evidence possibly favorable to JFM in an otherwise disputed record does not call the verdict into question.

Looking at the infringement finding more broadly, substantial evidence supported the jury's presumed finding that Zigma and Johnstech's claimed invention perform substantially the

5

same function in substantially the same way with substantially the same result. The record is well stocked with evidence allowing the conclusion that Zigma performs the same function of substantially eliminating sliding. Andres testified that as a person of ordinary skill in the relevant art, he would understand the '866 patent's "sliding is substantially eliminated" limitation to mean that sliding is substantially reduced relative to the extent of sliding in the prior art. Tr. at 222. JFM says that the prior art cannot provide an appropriate benchmark for whether sliding is substantially eliminated, but the Court already considered and rejected that in claim construction. Specifically, the Court found that the '866 patent "suggests two boundaries -- on one side, an apparatus that completely eliminates sliding (whose contact only rolls), and on the other side, an apparatus that works by a primary mechanism of sliding, the Johnson patent described in the prosecution history. . . . A person of skill in the art would be able to . . . determine whether his product approximated or was equivalent to the former and so fell inside the claim." Claim Construction Order at *9. As the claim construction order made clear, references to the amount of sliding in the prior art were appropriate in this particular case in light of "the claim and the explanation of it found in the written description of the patent, as well as . . . the patent's prosecution history." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) (internal quotations and citations omitted).

Johnstech's expert witness Dr. Stuart Brown offered data from two different measurement techniques to compare the amount of sliding in the prior art, in ROL 200, and in Zigma. Dr. Brown explained that using an X-ray imaging technology called MicroCT, he measured the prior art to slide between 165 and 270 microns, ROL 200 to slide between 25 and 55 microns, and the Zigma to slide 95 microns. Tr. at 431. Then, using a computer-simulated technique called Finite Element Analysis ("FEA"), Dr. Brown measured the prior art to slide 191 microns, ROL 200 to slide 1 micron, and Zigma to slide 24 microns. Tr. at 441. Based on these measurements, the jury could reasonably have concluded that Zigma substantially eliminates sliding. For example, the jury could have looked to the FEA results, which indicated that Zigma reduces sliding over the prior art by 87 percent. JFM's own expert witness Dr. Kim Parnell testified that he believed FEA was the superior measurement approach over MicroCT. Tr. at 751. Although Dr. Parnell took

6

issue with how Dr. Brown had parameterized his FEA measurements and offered competing results, the jury was not required to credit JFM's figures over Johnstech's.

The record also shows that the jury reasonably concluded that Zigma performs in substantially the same way by using a stiff component touching the housing wall to engage the contact. Andres offered uncontradicted testimony that Zigma uses a "high-durometer," "70 Shore A elastomer." Tr. at 248. He stated that that material is "roughly the equivalent of tire rubber for an automobile," and Zigma's precompression of the elastomer, along with its relatively large size, makes the elastomer "perform as though it's much, much stiffer." Tr. at 248-50. JFM witness Shamal Mundiyath, head of design and development at JFM, admitted during cross-examination that the material used in Zigma's rear elastomer is "about as hard as it can go before it becomes plastic." Tr. at 659. From this testimony and other evidence, the jury had solid grounds for concluding that Zigma's engagement of the contact by a highly stiff, pre-compressed elastomer, where the elastomer itself was directly engaged by the housing wall, is substantially equivalent to direct engagement of the contact by the housing wall.

JFM argues that indirect engagement cannot be equivalent to direct engagement as a matter of law because the '866 patent requires direct engagement, and that requirement is effectively eliminated, or "vitiated," by a finding of infringement. The contention is not well taken. The vitiation exclusion "is not an exception to the doctrine of equivalents, but instead a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.' . . . . [T]he vitiation test cannot be satisfied by simply noting that an element is missing from the claimed structure or process because the doctrine of equivalents, by definition, recognizes that an element is missing that must be supplied by the equivalent substitute." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356-57 (Fed. Cir. 2012) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997)). The evidence here was adequate: Johnstech presented evidence that the size and composition of Zigma's rear elastomer allowed it to function as a very stiff component between the contact and the housing wall, similar to the '866 patent's description of a housing wall that directly engages the contact. *Id.* at 1357 ("reasonable jury could find that a small spacer connecting the upper and lower deck walls represents an *insubstantial*

*difference* from direct contact") (emphasis in original). The Zigma contact's indirect engagement with the housing wall via a stiff elastomer is not the "antithesis" of the direct contact described by Johnstech's patent. This case is readily distinguishable from the vitiation examples that JFM offers. *See, e.g.*, *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 ("before" and "after," "minority" and "majority," "mounted" and "unmounted" are examples of "antithesis") (listing cases).

Substantial evidence supports as well the jury's conclusion that Zigma achieves substantially the same result. Andres testified that engagement forces the contact in Zigma and in ROL 200 to "move forward as it's compressed." Tr. at 250. In a typical two-elastomer system, Andres stated, "the contact wants to move away from the computer chip as it's being tested. . . . It's very difficult to make it move the opposite direction. But on the Zigma, it actually moves forward." *Id.*

Overall, there is no doubt that the trial record provided a firm foundation for the jury to resolve the question of infringement under the function/way/result test. The verdict of infringement is amply supported by the evidence. Because interchangeability is not necessary to find infringement under the doctrine of equivalents, *see, e.g.*, *Warner-Jenkinson*, 520 U.S. at 37, and the jury was so instructed with JFM's approval, Dkt. No. 222 at 24, the Court need not reach JFM's arguments on interchangeability.

## II. New Trial

JFM also seeks a new trial under Rule 59. In our circuit, the grant of a new trial is entrusted to the district court's discretion. *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 843 (9th Cir. 2004). Under Rule 59, "a trial court may grant a new trial if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.' . . . [A] district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)). A district court's denial of a motion for a new trial is reversible "only if the district court makes a legal error in applying the

8

1  standard for a new trial or the record contains no evidence that can support the verdict." *Alford v.*
2  *Haner*, 446 F.3d 935, 936 (9th Cir. 2006); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729
3  (9th Cir. 2007). "Unlike a motion for judgment as a matter of law, a motion for new trial does not
4  have to be preceded by a Rule 50(a) motion prior to submission of the case to the jury." *Freund,*
5  347 F.3d at 765.

6  JFM's new trial motion is cursory in the extreme, consisting of a bare half-page of
7  argument made at the very end of its brief. Dkt. No. 267 at 25. It simply recites the standard for a
8  new trial and slaps that on its Rule 50 arguments. While the substantial evidence test under Rule
9  50 and the clear weight of evidence standard under Rule 59 have some analytical affinity, they are
10 separate inquiries, and JFM does not say a word substantively about the application of Rule 59
11 here. This default is problematic because JFM's request for a new trial turns mainly on challenges
12 to willfulness and obviousness that are discussed solely in terms of judgment as a matter of law
13 but that are waived for Rule 50 purposes. In effect, JFM seeks a new trial under Rule 59 based on
14 the standards of Rule 50 for arguments that it cannot make under that rule. This unusual posture is
15 even more problematic because JFM's arguments consist mainly of cataloguing the evidence it
16 considers favorable to its case, which is a far different exercise from directly addressing the Rule
17 50 question of whether substantial evidence supports the verdict, or the Rule 59 question of
18 whether the clear weight of the evidence supports the verdict. *See, e.g.*, Dkt. No. 267 at 21.

19 This alone is enough to deny a new trial. JFM has not demonstrated that the clear weight
20 of the evidence supports a new trial for any reason, and the Court has no concerns that the verdict
21 was in any way a miscarriage of justice. A good argument can be made that to avoid giving
22 unearned substance to JFM's threadbare new trial request, any further discussion here is undue.
23 Even so, a few salient observations will help underscore the soundness of the verdict.

24 **A. Infringement**

25 JFM's request for a new trial on the basis of the infringement verdict is easily dispatched.
26 As the Rule 50 discussion amply demonstrates, the verdict was supported by substantial evidence
27 and by no means contrary to the clear weight of the evidence as whole. There is no indication
28

9

whatsoever that false evidence was in play at any point in the trial, and the verdict does not come close to a miscarriage of justice.

### B. Willfulness

JFM's new trial request on willfulness is also uncompelling. Johnson testified that JFM first contacted Johnstech in 2009 proposing to manufacture test contactors on behalf of Johnstech. Tr. at 149-52. Johnstech, which had begun manufacturing the ROL 200, declined JFM's offer. Afterwards, Johnstech learned from its customers that a "clone" of the ROL 200 had appeared on the market -- JFM's Zigma. Tr. at 152-54. After Johnstech filed suit in June 2014 and through October 2015, JFM continued to market Zigma and made nearly 300 sales in that sixteen month period. Tr. at 472.

As shown in the JMOL discussion, the clear weight of the evidence did not favor JFM's suggestion that it intentionally designed Zigma for indirect engagement to achieve benefits unrelated to load board wear. And to the extent JFM attempted to proffer evidence against willfulness, credibility problems undermined its persuasive value. For example, Mundiyath was a key witness for JFM on matters relating to willfulness, and his testimony at trial was at times evasive or inconsistent with his deposition testimony. To illustrate, Mundiyath was shown a JFM document titled "Zigma Vs Rol200" that compared CAD drawings of Zigma and ROL 200. TX 37. He identified the document as drawn from JFM design history files. Tr. at 650. When asked if he had compared Zigma to ROL 200 during the design process, Mundiyath said, "No. . . . Not while designing Zigma, but after the design was done, everything, all the whole design was frozen . . . . And this is something I generated just to make sure that [Zigma was compatible with the market]." *Id.* Counsel for Johnstech then read aloud a portion of Mundiyath's deposition testimony, where Mundiyath had testified that the relevant document was prepared "during the development time of Zigma." Tr. at 651. When pressed for further clarification, Mundiyath responded, "Why you joining together with ROL?" *Id.* In another instance, Mundiyath testified that after learning of Johnstech's June 2014 lawsuit against JFM, he personally evaluated the '866 patent and decided that Zigma did not infringe. Tr. at 638. On cross examination, counsel for Johnstech showed Mundiyath that he testified in deposition that he had no opinion on

10

infringement. Tr. at 641. When counsel for Johnstech asked Mundiyath if he was changing his testimony, Mundiyath responded, "No. Now you're asking me the earlier opinion, or new opinion, or what? I don't understand your question." *Id.*

These exchanges are representative of the credibility issues that surfaced during cross-examination, and they are properly considered in deciding against a new trial along with other factors. *See Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). Whether the Court will in turn award enhanced damages is a question that will be answered in a separate order. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 n.13 (Fed. Cir. 2016).

**C. Validity**

At trial, JFM sought to challenge the '866 patent on anticipation and obviousness. JFM's post-trial motion makes just a single passing reference to anticipation, does not discuss the applicable legal standard, and apparently concedes that evidence on anticipation was disputed at trial. Dkt. No. 267 at 21. Johnstech's opposition points out that JFM's motion is predicated on obviousness only, Dkt. No. 270 at 19, and JFM's reply brief does not challenge that view or otherwise discuss anticipation at all, Dkt. No. 272. Nor did JFM raise anticipation at the hearing. *See* Dkt. No. 299. Consequently, by JFM's own admissions, anticipation does not warrant a new trial.

The obviousness verdict is also no reason to try the case again. A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.[3] Obviousness is a mixed question of law and fact. *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1339 (Fed. Cir. 2014). In reviewing a jury's black-box obviousness verdict on a motion for a new trial, the Court presumes that the jury resolved the underlying factual disputes in favor of Johnstech and will not disturb those presumed findings unless they are contrary to the clear weight of the evidence. *Apple*, 839 F.3d at 1047; *Molski*, 481

---

[3] Given the filing date of the '866 patent, the pre-AIA version of Section 103 applies here. The differences between pre-AIA Section 103 and post-AIA Section 103 are not relevant to this case.

11

F.3d at 729. In light of those facts, the Court then examines the jury's legal conclusion of obviousness de novo. *Apple*, 839 F.3d at 1047.

In the ordinary course, the question of obviousness entails several factual inquiries: (1) "the scope and content of the prior art," (2) "differences between the prior art and the claims at issue," (3) "the level of ordinary skill in the pertinent art," and (4) "indicia of obviousness or nonobviousness" such as "commercial success, long felt but unsolved needs, [or] failure of others." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966). "A determination of whether a patent claim is invalid as obvious under § 103 requires consideration of all four *Graham* factors, and it is error to reach a conclusion of obviousness until all those factors are considered." *Apple*, 839 F.3d at 1048 (citing *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1075-76 (Fed. Cir. 2012)).

The jury instruction on obviousness, which JFM agreed to, required consideration of each of the four factors. Dkt. No. 222 at 30-31. Because issued patents are presumed valid and non-obvious, the burden rests with JFM to "demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *InTouch*, 751 F.3d at 1347 (internal quotations and citations omitted).

JFM's motion barely addresses the *Graham* factors or its burden of proof, and amounts to little more than a recitation of the testimony that JFM's infringement expert offered at trial. The Court is reluctant to take up the slack and march through obviousness issues that JFM did not adequately brief. Nevertheless, for the sake of completeness, the Court will explain why none of these issues support a new trial on obviousness. The Court's discussion focuses on Claim 1 of the '866 patent, since all other asserted claims were dependent on Claim 1.

The third *Graham* factor was undisputed. The parties stipulated in the jury instructions that the relevant level of skill consisted of an undergraduate degree in mechanical or electrical engineering with certain experience. Dkt. No. 235 at 3.

On the first *Graham* factor about the scope and content of the prior art, Dr. Parnell testified on behalf of JFM that Ludwig '355, Rathburn '749, and Hasegawa '612 are relevant. *See* TX 27, 24, 26. Johnstech agreed that Ludwig and Hasegawa are relevant, as they are disclosed in the '866 patent, but presented substantial evidence that Rathburn is not. Andres testified that the Rathburn invention is designed to test a "ball grid array [integrated circuit] device" unlike the device that the '866 patent is designed to test, which has "metal leads on the edges." Tr. at 265. Andres explained that the Rathburn invention differs from the '866 patent in a "multitude of ways." *Id.* For example, Rathburn lacks a housing, and instead of two round elastomers, Rathburn uses a "thin sheet of elastomer" with "perforations" and has a "grid of contacts" instead of "rows of contacts." Tr. at 265-66. Dr. Parnell stated that in his view, Rathburn is relevant prior art because "[i]t's still a contact device for testing integrated circuits." Tr. at 767. In sum, the jury heard contested evidence on this factor, and was by no means obligated to favor JFM's account over Johnstech's. Nothing here was contrary to the clear weight of the evidence.

On the second *Graham* factor, Andres testified that each of Ludwig, Rathburn, and Hasegawa teach away from the method of eliminating sliding that is claimed by the '866 patent. "A reference that properly teaches away can preclude a determination that the reference renders a claim obvious. Whether or not a reference teaches away from a claimed invention is a question of fact." *In re Mouttet*, 686 F.3d 1322, 1333 (Fed. Cir. 2012) (internal citations omitted). On Ludwig, Andres testified that the contact has a "sharp point" "meant to rock or pivot on a single point on the load board," whereas ROL and Zigma "have large radii that are on the load-board pads." Tr. at 261; *see also* TX 27. Dr. Parnell agreed that a "rocking" motion is distinct from a "rolling" motion and conceded that in his expert report, he had opined that Zigma absolutely would not infringe the '866 patent if the contact rocked instead of rolled. Tr. at 803-04. A finding that Ludwig's focus on rocking around a single point teaches away from the '866 patent's method of rolling along the load board would not have been against the clear weight of the evidence.

The same is true for Hasegawa. Andres testified that as the integrated circuit to be tested "comes down, the end of the contact deforms and bends . . . [and] does not move on the printed circuit board, at all," in contrast to the rolling, rigid contact described in the '866 patent. Tr. at

13

263-67. Dr. Parnell conceded on cross that Hasegawa largely addresses "deformable contacts; meaning where the contact really bends and changes shape substantially. There are a number of those that are shown in Hasegawa." Tr. at 808. Dr. Parnell identified only one figure in Hasegawa "that would be a very rigid contactor, or it could be modified to be more rigid." *Id.* A finding here that Hasegawa teaches away by focusing on deformable contacts that do not move along the load board again would not have been against the clear weight of the evidence.

For Rathburn, even if the jury believed that it might have been relevant prior art, Dr. Parnell conceded during cross examination that Rathburn finds "in some circumstances, it's desirable to increase the amount of wiping [sliding] along the load board." Tr. at 805.

Finally, Andres testified that, as a person of ordinary skill in the art, he knew of no reason to modify or to combine Ludwig, Rathburn, Hasegawa, or any other prior art references to produce the invention of the '866 patent. *See* Tr. at 267.

On the fourth *Graham* factor, Johnstech presented considerable objective evidence of non-obviousness. "Objective indicia of nonobviousness play a critical role in the obviousness analysis. . . . . Objective indicia can be the most probative evidence of nonobviousness in the record, and enables the court to avert the trap of hindsight." *Leo Pharm. Prod., Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013) (internal quotations and citations omitted). Commercial success, long-felt need, and copying are all objective evidence of non-obviousness, *Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1087-88 (Fed. Cir. 1995), and those factors were all present in Johnstech's case. On long-felt need, Johnstech Director of Sales and Marketing Dennis Wagner testified that Johnstech serves a "niche" segment in the "analog, mixed-signal, and RF market," Tr. at 357, for which "prolonged load-board life" is a desirable feature, Tr. at 365. Wagner explained that load-board wear had been an issue for Johnstech customers since 1990, and that Johnstech had tried but failed to offer a viable solution until Johnstech developed ROL in 2002. Tr. at 360-62. Andres illustrated that Johnstech's ROL product actually practices the '866 patent using video clips and physical models, Tr. at 211-22, 244. On commercial success, Wagner testified that the ROL line has received a "very strong" reaction from customers who "started moving over to ROL product fairly quickly," displacing sales for Johnstech's earlier design. Tr. at

14

365-66.  Finally, on copying, Johnstech presented evidence that JFM and other third parties had copied its design.  Johnstech witnesses testified that a company called IDI had manufactured and sold a copycat test contactor that substantially eliminates sliding.  Tr. at 147, 271-72.  Johnstech sued IDI for patent infringement, the parties settled, and IDI pulled its test contactor off the market.  Tr. at 148.  Johnstech's counsel also elicited on cross-examination that JFM designed or marketed Zigma with Johnstech's niche market in mind.  *See, e.g.*, Tr. at 650; *see also* TX 37.

In light of the trial record as a whole, the Court declines to depart from the jury's presumed factual findings that (1) Rathburn is not relevant prior art, (2) Ludwig, Hasegawa, and Rathburn teach away from the '866 invention, (3) and ROL 200's substantial elimination of sliding addressed a long-felt need, experienced commercial success, and was copied by competitors. Consequently, JFM has not demonstrated obviousness on clear and convincing grounds, and a new trial on validity is not warranted.

## CONCLUSION

The Court denies JFM's motion for judgment as a matter of law, or, in the alternative, a new trial.

**IT IS SO ORDERED.**

Dated: June 8, 2018

JAMES DONATO
United States District Judge