UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNSTECH INTERNATIONAL CORP., <br> Plaintiff, <br> v. <br> JF MICROTECHNOLOGY SDN BHD, <br> Defendant. | Case No. 3:14-cv-02864-JD <br><br> **ORDER RE PERMANENT INJUNCTION** <br> Re: Dkt. No. 287 |

This order resolves a request by plaintiff Johnstech International Corp. ("Johnstech") for a post-trial injunction against defendant JF Microtechnology SDN BHD ("JFM"). In September 2016, a jury found that JFM willfully infringed U.S. Patent No. 7,059,866 (the "'866 patent"), which Johnstech holds, by manufacturing and selling "Zigma" test contactors. Dkt. No. 242. The jury also rejected JFM's invalidity contentions and awarded Johnstech $636,807 in lost profits. *Id.* JFM has continued to sell Zigma since the verdict, including more than 100 units in the United States. Dkt. No. 287 at 5-6.

JFM moved for judgment as a matter of law or a new trial, which the Court denied in a detailed decision that provides the factual and procedural context for this order. *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, __ F. Supp. 3d. __, No. 3:14-CV-02864-JD, 2018 WL 2762551, at *1 (N.D. Cal. June 8, 2018). A permanent injunction is granted.

## LEGAL STANDARDS

A party seeking a permanent injunction under the Patent Act must show: (1) irreparable injury, (2) remedies available at law are inadequate, (3) the balance of hardships favors an injunction, and (4) the public interest would not be disserved by an injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "The decision to award or deny permanent

injunctive relief lies within the equitable discretion of the district court." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 639 (Fed. Cir. 2015) (citing *eBay*, 547 U.S. at 391). In examining the four *eBay* factors, the Court may not make findings of fact contrary to the jury's express or implied factual determinations because Johnstech's equitable claims are predicated on the same facts as the legal claims that were submitted to the jury at trial. *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016).

**DISCUSSION**

The four *eBay* factors weigh decisively in favor of an injunction. JFM does not dispute that it is in direct competition with Johnstech, and the evidence at trial amply underscored that fact. This market relationship informs Johnstech's showing of irreparable injury. "Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales. . . . Where two companies are in competition against one another, the patentee suffers the harm -- often irreparable -- of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1344-45 (Fed. Cir. 2013). Where a jury award of damages implies a finding of direct competition, and where the parties share the same customers, sell products that occupy the same markets, and are each other's most significant competitors, it may be an abuse of discretion for the district court to find that no irreparable injury exists. *See, e.g.*, *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (irreparable injury where parties were direct competitors and patentee lost market share).

Because the jury awarded lost profits damages, it necessarily found that "but for the infringement there is a reasonable probability that [Johnstech] would have made sales that JF Microtechnology made of the infringing product." Dkt. No. 235 at 5 (jury instructions on lost profits). JFM agreed to the lost profits jury instructions, and conceded in its JMOL/new trial motion that substantial evidence supported the jury's calculation of lost profits. *Johnstech*, 2018 WL 2762551, at *2. There is no question that the jury's conclusion was supported by substantial evidence at trial. Among other facts, Johnstech showed that Zigma and ROL 200 target the same

niche market segment for analog, mixed-signal, and RF integrated circuits. *See, e.g.*, Tr. at 358; Tr. at 610.[1] A key JFM witness stated that he compared Johnstech's ROL 200 with Zigma in order to ensure Zigma's compatibility for JFM's market. Tr. at 650. Johnstech's damages expert testified that JFM and Johnstech were effectively the only two suppliers in the market they served, and pointed out that 99 percent of JFM's Zigma sales were made to former Johnstech customers. Tr. at 468-89.

Johnstech has also shown an adequate causal nexus between infringement and lost sales. Causal nexus requires the patentee to "show 'some connection' between the patented features and the demand for the infringing products. . . . Though the fact that the infringing features are not the only cause of the lost sales may well lessen the weight of any alleged irreparable harm, it does not eliminate it entirely." *Apple*, 809 F.3d at 641-42. The jury was instructed not to award lost profits unless Johnstech demonstrated that but for JFM's infringement of the '866 patent, there was a reasonable probability that Johnstech would have made the sales that JFM made. The jury necessarily concluded that JFM's infringement was related to demand for JFM's product, and the trial record amply supports that conclusion. Johnstech witnesses testified that prolonged board-life is a desirable feature for the market that Johnstech and JFM serve. *Johnstech*, 2018 WL 2762551 at *8. Demand for prolonged load board life could also be inferred from the fact that Johnstech customers quickly began switching to Johnstech's ROL line of test contactors, which practice the '866 patent and substantially eliminate sliding, from Johnstech's older models, which do not substantially eliminate sliding. *Id.* By showing that Zigma substantially eliminates sliding and that JFM markets Zigma as "less abrasive to loadboard" and "Loadboard friendly," s*ee, e.g.*, Tr. at 558, TX 35, Johnstech established a connection between JFM's infringement and Johnstech's lost sales.

JFM says that there can be no causal nexus between infringement and lost sales since Zigma was intentionally designed to promote non-zero sliding in order to achieve benefits unrelated to load board wear, including a shorter wiping stroke and reduced impact to the housing

---

[1] "Tr." refers to the trial transcripts, available at Dkt. Nos. 227, 229, 231, 233, 238, and 240.

3

wall. That same argument about intentional design to promote sliding was considered and rejected by the Court in the context of JFM's JMOL/new trial motion. *Johnstech*, 2018 WL 2762551 at *3. It fares no better when repackaged here as a challenge to causal nexus.

JFM also suggests that the request for an injunction should be denied on timeliness grounds. Because Johnstech filed its permanent injunction motion in compliance with the Court's scheduling orders, the timing of Johnstech's post-trial motion is not a factor here. Nor does the timing of Johnstech's initial lawsuit bar a finding of irreparable harm. While Johnstech became aware of Zigma as early as 2012, Johnstech did not notice sales lost to Zigma until some time in 2013 and was not able to obtain the Zigma product for inspection until that year. *See, e.g.*, Tr. at 374, 475; TX 79; Dkt. No. 293-1. Sales of Zigma to Johnstech's major customers jumped significantly between 2013 and 2014, and that is when Johnstech decided to file suit. *See, e.g.*, TX 79 at 3, 5. There is no indication that Johnstech was unduly dilatory in bringing this lawsuit or in filing a post-trial request for injunctive relief.

Looking at the second *eBay* factor, Johnstech has shown that money damages are inadequate. As an initial matter, infringement "may cause a patentee irreparable harm not remediable by a reasonable royalty" because the "essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008). The fact that Johnstech has never licensed the '866 patent indicates that harm suffered by Johnstech cannot be fully redressed by money payment. In addition, Johnstech showed at trial that lost sales of test contactors result in lost sales of services and parts. Tr. at 367. Finally, JFM has continued to sell Zigma in the United States since trial. "'[F]uture infringement . . . may have market effects never fully compensable in money.'" *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) (quoting *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994)). Since the record does not indicate that JFM "will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction," money damages are not adequate. *Id.*

The third *eBay* factor, the balance of hardships, also favors an injunction because it is a "substantial hardship" for Johnstech to have to "compete against its own patented invention." *Id.*

4

at 1156; *Apple*, 809 F.3d at 646. JFM's hardship is relatively lower than Johnstech's in that JFM witnesses indicated at trial that JFM has identified a number of ways in which Zigma could be modified to avoid infringing the '866 patent. *See, e.g.*, Tr. at 687, 803. JFM has had an unusually long opportunity to explore and implement these possible modifications and to design around the '866 patent. It received notice of the lawsuit in 2014, the jury verdict was rendered in 2016, and the parties asked to defer post-trial proceedings for almost a year while they discussed settlement. *See Johnstech*, 2018 WL 2762551, at *2. JFM has had plenty of time to modify Zigma, and its own choice not to do so does not tip the hardship balance in its favor.

Finally, an injunction would not be counter to the public interest. The "public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple*, 809 F.3d at 647; *Douglas Dynamics*, 717 F.3d at 1346 (public's interest in protecting property rights in inventive technology and encouraging innovation outweighs interest in cheaper infringing products). JFM says that an injunction would reduce supplier redundancy for test contactors, but that is hardly the sort of "critical public interest" that justifies denying an injunction. *See, e.g.*, *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988) (affirming grant of preliminary injunction concerning medical diagnostic test kits where millions of dollars of products were at stake, switching vendors would be expensive and time consuming, and where supply shortages to the public might result).

## CONCLUSION

A permanent injunction in the form of Attachment A is entered. JFM is directed to provide a copy of the injunction to all enjoined parties **within 30 days**. JFM must file with the Court and serve on all parties a notice stating the names and addresses of each party that it has notified. The Court retains jurisdiction to enforce, modify, extend or dissolve the injunction, and to decide all

disputes about whether a specific product or feature is more than colorably different from the Zigma product.

**IT IS SO ORDERED**.

Dated: June 19, 2018

JAMES DONATO
United States District Judge