United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNSTECH INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> JF MICROTECHNOLOGY SDN BHD, <br><br> Defendant. | Case No. 3:14-cv-02864-JD <br><br> **ORDER RE SUPPLEMENTAL AND ENHANCED DAMAGES, AND ATTORNEY'S FEES** <br><br> Re: Dkt. No. 303 |

In September 2016, a jury found that JFM willfully infringed U.S. Patent No. 7,059,866 (the "'866 patent"), which Johnstech holds, by manufacturing and selling "Zigma" test contactors. Dkt. No. 242. The jury rejected JFM's invalidity contentions and awarded Johnstech $636,807 in lost profits. *Id.* JFM moved for judgment as a matter of law or a new trial, which the Court denied in a detailed decision that provides the factual and procedural context for this order. *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, __ F. Supp. 3d. __, No. 3:14-CV-02864-JD, 2018 WL 2762551 (N.D. Cal. June 8, 2018). Despite the verdict against it, JFM continued to sell more than 100 Zigma devices in the United States while post-trial motions were pending. Dkt. No. 287 at 5-6. Sales effectively stopped only when the Court granted Johnstech's motion for a permanent injunction in June 2018. *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 3:14-CV-02864-JD, 2018 WL 3036759 (N.D. Cal. June 19, 2018).

This order resolves the last of the post-trial motions, which are Johnstech's requests for supplemental damages and interest to bring the jury award up to date, enhanced damages under Section 284 of the Patent Act, and attorney's fees under Section 285 of the Patent Act.

## I. Supplemental Damages and Interest

Supplemental damages and pre- and post-judgment interest are granted. 35 U.S.C. § 284. Under Section 284, Johnstech is entitled to damages for "infringing sales that the jury did not

consider and that preceded entry of the permanent injunction." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010). The jury awarded $636,807 for 277 Zigma sales between June 20, 2014, the day that Johnstech filed suit, and October 15, 2015, the day that fact discovery closed. Between October 15, 2015 and February 2018, JFM sold 250 additional units. Accounting for the 250 additional sales, Johnstech is entitled to $574,736 in supplemental damages, bringing lost profits damages to $1,211,543. JFM does not object to this calculation.

Pre- and post-judgment interest are also appropriate. Pre-judgment interest is granted at the prime rate, compounded annually. *See Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 4940798, at *12 (N.D. Cal. Aug. 19, 2015). The Court also awards post-judgment interest at the statutory rate of "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961.

## II. Enhanced Damages

Section 284 provides that the Court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. "District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount. . . . Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-34 (2016). "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or -- indeed -- characteristic of a pirate." *Id.* at 1932. A preponderance of the evidence standard applies. *Id.* at 1934.

The jury found by a preponderance of the evidence that JFM willfully infringed Johnstech's patent. That finding was supported by substantial evidence, as the Court discussed in detail in the order denying JFM's renewed JMOL motion. 2018 WL 2762551, at *6. Even so, it does not invariably follow from a jury's willfulness finding that enhanced damages are appropriate. "Discretion remains with the court to determine whether the conduct is sufficiently egregious to warrant enhanced damages. In determining whether enhanced damages are

2

appropriate, courts should consider the overall circumstances of the case." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017) (citing *Halo*, 136 S. Ct. at 1933). The list of nine factors outlined in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), are convenient guidelines for the Section 284 analysis, but they are not the only factors that may be relevant, and the district courts are not bound to apply them. *Presidio Components*, 875 F.3d at 1382.

Taking into consideration the totality of the circumstances, enhancement is appropriate in light of evidence of culpable conduct presented at trial and JFM's deliberate and conscious decision to continue selling Zigma after the verdict.

It was clear in the pre-trial proceedings that Johnstech's infringement case raised genuine disputes of material fact, namely whether Zigma substantially eliminated sliding between the contact and the load board, and whether Zigma infringed the '866 patent under the doctrine of equivalents. These questions required a jury to resolve them, as the Court concluded in the order denying summary judgment. *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-CV-02864-JD, 2016 WL 4242220 (N.D. Cal. Aug. 11, 2016). Consequently, on the pre-trial record, the question of infringement was, without doubt, debatable. *See Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1355 (Fed. Cir. 2018) ("the 'closeness of the case' remains a relevant consideration for determining the appropriateness of enhancement").

But the situation changed at trial. Johnstech presented credible evidence of deliberate copying, including evidence in JFM's design files directly comparing Zigma with Johnstech's ROL 200. TX 37. JFM's attempts to explain away the design comparisons were unpersuasive and of questionable veracity. For example, Zigma's designer, Shamal Mundiyath, testified that the files were created after Zigma's development, which contradicted his deposition testimony that the comparison files were created while Zigma was in development. Tr. at 651. Mundiyath's trial testimony also contradicted the trial testimony of JFM product manager Lee Eng Kiat, who testified by deposition that the files were part of Zigma's design history. Tr. at 515-17.

The evidence also raised doubts about whether JFM attempted in good faith to evaluate infringement after being sued. Mundiyath testified that he personally examined the '866 patent

3

after the lawsuit was filed and concluded that Zigma did not infringe, Tr. at 638, but that testimony, too, was called into question. Johnstech showed that during his deposition, Mundiyath had testified that he had no opinion on whether Zigma substantially eliminates sliding. Tr. at 641. When counsel for Johnstech asked Mundiyath if he was changing his testimony, Mundiyath's response appeared to confirm that he had never formed infringement opinions of his own: "Opinion -- actually how do you define an opinion? Because at that moment of time when you asked [during the deposition], I said I don't want to give an opinion because we haven't gone through the expert -- you know, our experts here. So now we have gone through the experts, I strongly believe that my opinion is this." Tr. at 642.

This, and other evidence at trial, was more than sufficient to support the jury verdict of willful infringement. After the verdict, JFM continued to sell Zigma and did not modify the units in any way. Its course of conduct can only be seen as intentional, and entirely at its own risk.

In opposing enhanced damages, JFM again re-hashes infringement arguments that the jury rejected at trial and that the Court rejected on JFM's renewed JMOL and new trial motion. For example, JFM again argues that Zigma features indirect engagement in order to promote benefits unrelated to minimizing load board wear. These recycled contentions are not a meaningful response to the request for enhancement of damages. JFM also asks the Court for the first time to consider portions of Mundiyath's deposition that would purportedly cure one of the contradictions in his trial testimony. *See* Dkt. No. 311-1 at 83. This proffer is untimely, since JFM had plenty of opportunity to present it at trial or in its motion for a new trial, but didn't. *See, e.g.*, Tr. at 640-42; Dkt. Nos. 267, 272. Even if the Court were to consider this new evidence at the damages phase, it would have no effect on the Court's findings. Assuming for the sake of argument only that the depo testimony could somehow rehabilitate a portion of Mundiyath's testimony, substantial evidence would continue to support the jury's finding of willful infringement: Mundiyath was impeached on multiple topics, and Johnstech showed that Zigma's design history files included direct comparisons with ROL 200. Nor does the testimony have any bearing on the undisputed fact that JFM continued to sell Zigma after the trial verdict.

The parties' submissions indicate that approximately a quarter of the total sales at issue took place after the jury verdict. Dkt. No. 287 at 5-6 (119 sales). To reflect the significantly increased culpability of the post-verdict sales, the Court enhances damages by 25%, resulting in total damages of $1,514,429.

## III. Attorney's Fees

Section 285 of the Patent Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Court set out the standards that govern Section 285 fee awards in *In re Protegrity Corp.*, No. 3:15-MD-02600-JD, 2017 WL 747329 (N.D. Cal. Feb. 27, 2017). "The district court determines whether an action qualifies as exceptional in light of the totality of the circumstances in each case. Relevant factors include, but are not limited to, 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' A preponderance of the evidence standard applies, and the disposition of the fee request is entrusted to the district court's sound discretion." *Id.* at *2 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1754-56 (2014)) (other citations omitted). Even if a case is exceptional under Section 285, the district court in its discretion may decline to award fees. 35 U.S.C. § 285 ("may"); *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1309 (Fed. Cir. 2013). Fee shifting is warranted only where "the totality of the circumstances . . . show[s] that a case was egregious on the merits or in the way it was handled, or in some combination of the two." *In re Protegrity Corp.*, 2017 WL 747329 at *2.

In *In re Protegrity*, the Court emphasized that fee "shifting is not imposed as a penalty just for losing a patent infringement case. . . . The determinative test is 'the substantive *strength* of a party's litigating position' and specifically whether it was 'so merit-less as to "stand out" from the norm and, thus, be exceptional.'" *Id.* at *3 (citing *SFA Systems, LLC v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting *Octane Fitness*, 134 S. Ct. at 1756) (emphasis in *SFA Systems*)). Moreover, "the facts that brand a case as exceptional should be fairly visible in the record. . . . A fee motion should not force the court to painfully reconstruct the minutiae of old

arguments or spend days poring over masses of conflicting declarations, transcripts and other evidence." *Id.*

A finding of willful infringement may be "compelling" evidence that a case was "exceptional" under Section 285, but a case is not automatically exceptional simply because willfulness was present. *See S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) (willfulness does not imply an exceptional case, though willfulness may suffice in a "particular case"). Here, even though the jury found willfulness, a number of factors counsel against finding that the case was exceptional.

To start, as the Court noted at the summary judgment phase of the case, Zigma did not literally infringe the '866 patent but could infringe under the doctrine of equivalents. At trial, it was not frivolous for JFM to argue that Zigma placed an elastomer between the contact and the housing wall in order to achieve benefits unrelated to minimizing load board wear. Although the jury rejected that theory, the verdict alone does not indicate that, *ex ante*, JFM's infringement position was so meritless as to stand out from the norm.

In addition, to the extent that JFM engaged in atypically bad litigation misconduct, much of that misconduct was redressed earlier in the case. For example, JFM failed to estimate counterclaims damages during initial disclosures, and later sought damages based on overseas sales figures that JFM had withheld from Johnstech during discovery. *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-CV-02864-JD, 2016 WL 4182402, at *2 (N.D. Cal. Aug. 8, 2016). JFM agreed to reimburse Johnstech for expenses incurred as a result of JFM's misconduct. *Id.* The Court also sanctioned JFM by barring it "from making a claim for or presenting evidence of any special or actual damages" on the counterclaims. *Id.* Other examples of JFM's tactics -- some discovery spats and a motion to amend invalidity contentions -- are not unusual in a "'garden-variety' hard-fought patent case," and do not indicate that this case was exceptional. *Presidio Components*, 875 F.3d at 1382.

It is true that JFM witnesses at trial offered evasive and contradictory testimony on Zigma's design history and on whether JFM had a subjective, good-faith belief of non-

6

infringement.  That is of concern, and it is no small matter for a party's representative to give less than fully truthful testimony before the jury.  But in the grand scheme of the case, the Court cannot say that a few moments of low credibility were enough to make it exceptional for attorney's fees purposes.  The credibility issues were most striking for only one witness, Mundiyath, and did not permeate JFM's trial presentation as a whole.  There is no evidence that JFM or its attorneys built a defense based on pervasive fraud or lies.  To the contrary, the contradictions in Mundiyath's testimony did not fundamentally alter the nature of JFM's infringement defense, which relied on a number of other considerations, several of them technical in nature.

Consequently, the Court concludes that the case was not exceptional under Section 285.  This serves the fundamental purpose of Section 285, which is to redress a "gross injustice" and not just a few disappointing incidents.  *In re Protegrity Corp.*, 2017 WL 747329, at *3 (citing cases).  It cannot be said that Mundiyath's conduct at trial forced Johnstech to incur unnecessary fees.  *See Kilopass*, 738 F.3d at 1313.  It was a blameworthy moment, but it passed quickly.

## CONCLUSION

Supplemental damages and pre- and post-judgment interest are granted.  Under Section 284, the Court awards $1,514,429 in damages.  Attorney's fees under Section 285 are denied.

**IT IS SO ORDERED.**

Dated:  August 6, 2018

JAMES DONATO
United States District Judge